208 N.J. Super. 247 (1984)
505 A.2d 210
STATE OF NEW JERSEY
v.
SALVATORE MERLINO, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal), Atlantic County.
Decided March 16, 1984.[1]
*249 Jeffrey S. Blitz, Chief Asst. Atlantic Cty. Pros., for State. (Joseph A. Fusco, Atlantic Cty. Pros.).
Carl D. Poplar for defendant.
PERSKIE, J.S.C.
This matter poses the question, apparently not heretofore considered, of whether the State may introduce evidence tending to establish that "there is a substantial likelihood that defendant is involved in organized criminal activity," N.J.S.A. 2C:44-1(a)(5), in order that the court may find and consider that fact as an "aggravating circumstance" for purposes of sentence, notwithstanding that the crimes of which defendant has been convicted have no relationship to "organized criminal activity." If the State may present testimony for this purpose, what is its burden of proof at such a hearing? Should there be any relaxation of the rules of evidence and, if so, to what extent?
Defendant was convicted in a nonjury trial of attempting an unlawful gift to a public servant to influence the performance of his official duties, N.J.S.A. 2C:27-6(b); 2C:5-1, a third degree crime, and bribery, N.J.S.A. 2C:27-2(c), a second degree crime.[2]
*250 In brief, defendant was arrested and charged with operating a motor vehicle while under the influence of alcohol. On the way to the police station and during the processing of the motor vehicle charge, defendant offered the police officer cash and other considerations in an attempt to effect his release without being charged with the motor vehicle offense. The processing of defendant at the police station was video-taped and most of the acts that formed the basis for the convictions were committed in full view of the camera.
Defendant more or less conceded the solicitations, but argued in defense that his state of intoxication at the time was such as to negate the mental state required for the commission of either of the offenses.[3]N.J.S.A. 2C:2-8(a).
The State brings this motion seeking a determination that there is a substantial likelihood that defendant is involved in organized criminal activity, so that this fact may be considered an "aggravating circumstance" for sentencing purposes. The State concedes that the offenses of which defendant has been convicted are "unrelated to his organized criminal activity." Its proffer is that law enforcement personnel and others will testify that defendant holds membership in an "organized crime family" operating in the Philadelphia and Atlantic City areas. This testimony apparently will include the results of electronic surveillance, the association of defendant with other "crime figures," and testimony of "informant information" regarding defendant's "membership and rank" within the organized crime family. The State asserts that a sentencing court may consider evidence that a defendant is connected with organized criminal activity even though the underlying convictions are not related to that activity, and that the proper focus of the reference to "organized criminal activity" is upon the offender rather than the offense.
*251 The State further argues that the sentencing proceeding is not limited by "all of the procedural safeguards and evidential limitations of a criminal trial," and that therefore reliable and credible hearsay supplied or corroborated by surveillance and informant information is admissible to establish defendant's "organized criminal activity."
On the question of the applicable burden of proof, the State suggests that the plain language of the statute contemplates a discretionary weighing of factors in the determination of a "substantial likelihood" of involvement in organized criminal activity. The State relies upon the absence of any evidentiary standard in the statute in reaching the conclusion that the State "need only show it is more likely than not that there are organized crime ties," and that the court should consider this evidence if reliable and credible without reference to any specific burden of proof.
Defendant argues that a criminal statute must be construed narrowly and if the language is capable of more than one interpretation, the court must adopt the interpretation that limits rather than expands the plain meaning of the words. Defendant insists that the proper focus of this aggravating circumstance is upon the offense, not the offender, and that the State's concession that the offense is not related to organized criminal activity precludes any consideration of this circumstance by the court.
If the State is permitted to attempt to establish the aggravating circumstance, defendant argues that the State has the burden of proving its case by at least clear and convincing evidence, and possibly beyond a reasonable doubt. Lastly, defendant asserts that the rules of evidence should be strictly applicable at such a hearing without waiver or relaxation.
The importance of the determination the court is asked to make is immediately apparent from an analysis of the statutory sentencing scheme and an examination of the record in this case. In determining an appropriate sentence the court *252 is obliged to find and consider any aggravating and mitigating circumstances and to weigh such circumstances in the light of "an inexorable focus upon the offense." State v. Roth, 95 N.J. 334, 367 (1984). Indeed the statute requires a presumptive sentence of seven years for a crime of the second degree and four years for a crime of the third degree "unless the preponderance of aggravating factors or preponderance of mitigating factors ... weighs in favor of higher or lower terms." N.J.S.A. 2C:44-1(f)(1). Additionally, in a case "where the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands," the court may sentence a defendant convicted of a second degree offense as a third degree offender. N.J.S.A. 2C:44-1(f)(2). Accordingly the statute specifically and carefully requires a balancing of the aggravating and mitigating factors.
The court finds that the only aggravating factors established by the evidence at trial and from a review of the pre-sentence report are that defendant committed the offense against a police officer performing his duties, N.J.S.A. 2C:44-1(a)(8), and the need for deterring defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9). There are, on the other hand, six mitigating factors that the court finds have been established: defendant's conduct neither caused nor threatened serious harm, N.J.S.A. 2C:44-1(b)(1); defendant did not contemplate that his conduct would cause or threaten serious harm, N.J.S.A. 2C:44-1(b)(2); there were substantial grounds tending to excuse or justify defendant's conduct, though failing to establish a defense (defendant's intoxication) N.J.S.A. 2C:44-1(b)(4); defendant has no history of prior delinquency or criminal activity, N.J.S.A. 2C:44-1(b)(7); defendant's conduct was the result of circumstances unlikely to recur, N.J.S.A. 2C:44-1(b)(8); and defendant appears particularly likely to respond affirmatively to probationary treatment (he has a stable family and employment background), N.J.S.A. 2C:44-1(b)(10).
It is important to observe that the statute requires the court to impose a sentence of imprisonment for a second degree *253 offense "unless, having regard to the character and condition of the defendant, it is of the opinion that his imprisonment would be a serious injustice which overrides the need to deter such conduct by others." N.J.S.A. 2C:44-1(d). Such a conclusion cannot be reached by a simple preponderance of either aggravating or mitigating factors, for that process yields only the range of a sentence of imprisonment. Roth, 95 N.J. at 368.
Considering the nature and circumstances of the offense and the impact and relative importance of the two aggravating factors and six mitigating factors, the court concludes that the existence or nonexistence of "a substantial likelihood that the defendant is involved in organized criminal activity" is an important consideration in reaching an appropriate sentence. Such an aggravating factor, if established, could well preclude the court from being clearly convinced that the mitigating factors substantially outweigh the aggravating factors, thereby precluding sentencing of the second degree offense as a third degree offense. N.J.S.A. 2C:44-1(f)(2). Additionally such an aggravating factor could substantially affect the determination of whether the presumption of imprisonment has been overcome, N.J.S.A. 2C:44-1(d), and, if defendant is to be imprisoned, whether for the presumptive term or for a higher or lower term within the limits provided. N.J.S.A. 2C:44-1(f)(1).
For these reasons a determination of whether or not there is a substantial likelihood that defendant is involved in organized criminal activity is an inescapable part of the determination of the appropriate sentence if, as the State suggests, this aggravating factor applies to the offender rather than to the offense.

I. Applicability of the Aggravating Circumstance
The legislative history of the Code of Criminal Justice, the changes intended in the sentencing process by the enactment of the Code, and long-standing guidelines in fixing appropriate *254 sentences all offer some assistance in interpreting the statutory language.
N.J.S.A. 2C:44-1(a)(5) traces its roots to the original version of the Model Penal Code presented to the Governor and the Legislature in October 1971. The New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission, Vol. 1, p. 152 (Oct. 1971). Section 44-1(a)(4) of the Code specified as an aggravating circumstance the fact that "the offense is characteristic of organized criminal activity." After a lengthy review by the Judiciary, Law, Public Safety and Defense Committee of the General Assembly, the Code was introduced into legislative form in 1975, with the language of this aggravating circumstance unchanged from the final report.[4] An identical bill was introduced the next year into the new Legislature.[5]
The bills ultimately enacted as the Code of Criminal Justice[6] were introduced in January 1978.[7] As introduced, these bills included the same language found in the Model Penal Code regarding the aggravating circumstance. After the bill was approved by the Senate, the General Assembly revised the language to its present form and the bill was so enacted into law. No record exists to document the reason for the change in language by the Judiciary Committee of the General Assembly. There were, of course, amendments to other sections of the bill, and § 44-1 itself underwent considerable additional alteration during the legislative process. The four original aggravating circumstances were revised and supplemented both in the Senate *255 and General Assembly. As ultimately enacted[8] several of the aggravating circumstances relate specifically to the offense, N.J.S.A. 2C:44-1(a)(1), (2), (4), (7) and (8), while others focus directly on the offender and his background, N.J.S.A. 2C:44-1(a)(3), (6) and (9).[9] In each instance the aggravating circumstances refer to "the defendant" or "the offense." The language of each, including N.J.S.A. 2C:44-1(a)(5), is clear and unambiguous, and reflects the legislative determination that *256 factors relating both to the nature and circumstances of the offense itself and to the background of the offender are appropriate areas of consideration in the sentencing process.
The legislative history establishes that, had it chosen to do so, the Legislature could have drafted this provision to apply unequivocally to the offense and to require a showing that the offense itself is characteristic of or involved with organized criminal activity. The change in the legislative language suggests, if it does not compel, the conclusion that the focus of the link to organized criminal activity shifted from the offense to the offender when the language was changed. It would be difficult to ascribe a different purpose to the amendment, particularly in view of the specificity of the original draft.
This result is emphasized by a comparison of the language of N.J.S.A. 2C:44-1(a)(5) with that of N.J.S.A. 2C:44-3(b), to which N.J.S.A. 2C:44-1(a)(5) is "analogous." State v. Maguire, 84 N.J. 508, 533, n. 19 (1980). N.J.S.A. 2C:44-3 provides criteria for sentencing a defendant to an extended term of imprisonment. Subsection (b) provides eligibility for such an extended term in the case of a "professional criminal," a person who committed a crime "as part of a continuing criminal activity in concert with two or more persons, with the circumstances of the crime showing that he has knowingly devoted himself to criminal activity as a major source of livelihood." This section provides a clear and unambiguous focus on the offense itself and, in that respect, is substantively indistinguishable from the thrust of the aggravating circumstance as originally suggested in the Model Penal Code.
This interpretation is all the more compelling in light of the legislative history of N.J.S.A. 2C:44-3(b) itself. As originally introduced[10], § 44-3(b) defined a professional criminal as "a person who committed an offense as part of a continuing criminal activity in concert with five or more persons and was *257 in a management or supervisory position or gave legal, accounting or other managerial counsel." This language was changed to its final form by committee amendment in the Senate prior to the passage of the bill. The final language of this section focuses attention on "the circumstances of the crime," while retaining the original language referring to "a crime as part of a continuing criminal activity."
The careful and deliberate changes in the legislative evolution of §§ 2C:44-1(a)(5) and 2C:44-3(b) demonstrate that the focus intended by the former is on the offender and the focus of the latter is on the offense. In simultaneously drafting the "analogous" provisions of these two sections the Legislature could have used the same or substantially the same language, as indeed it did in §§ 2C:44-1(a)(7) and 2C:44-3(c) relating to the concept of committing or procuring the commission of an offense as consideration for anything of pecuniary value. The significant difference in the language finally adopted, particularly in view of the rejection of the original language of § 44-1(a) suggested in the Model Penal Code, constitutes a strong basis for the conclusion that the words of N.J.S.A. 2C:44-1(a)(5) should be given their plain and most evident meaning, directing the inquiry to the likelihood that "the defendant is involved" in organized criminal activity, rather than to whether the offense is so related.
The principal change effected by the Code of Criminal Justice in the area of sentencing is to make the severity of the crime the single most important factor in the sentencing process, rather than the pre-Code approach of considering the severity of the offense merely as one factor among many to consider at sentencing. State v. Hodge, 95 N.J. 369 (1984). Yet neither the defendant nor his offense should be fictionalized for purposes of sentencing. The "whole person," not censored versions of his personal history or selected facets of his character, is to be addressed in fashioning an appropriate sentence. State v. Marzolf, 79 N.J. 167, 180 (1979). While the *258 degree of the crime itself must be the focus of the sentence, other factors personal to the defendant must be taken into account in the sentencing process. Hodge, supra, at 376. The "fundamental sentencing guideline that the punishment fit the crime, not the criminal," Hodge, supra, at 376, is not at all contravened by an examination of the background and personal circumstances of the offender. The same offense committed by people of varying backgrounds and histories may justifiably be the subject of disparate sentences. An offender's prior criminal record, family and employment background and other personal circumstances are legitimate considerations for a sentencing court. Indeed the public stature and higher degree of responsibility of a defendant may also impact upon the appropriate sentence. See, e.g., State v. Coruzzi, 189 N.J. Super. 273, 317 (App.Div. 1983). In this context there is no reason why the likelihood of the involvement of a defendant in, and his relationship to, organized criminal activity should not be factors that a court may consider in the imposition of sentence. See Moore v. United States, 571 F.2d 179 (3d. Cir.1978); United States v. Fatico, 579 F.2d 707 (2d. Cir.1978) (Fatico I).
The Code of Criminal Justice is not the only recent legislative action on the subject of organized criminal activity. In §§ 124-130 of the Casino Control Act, N.J.S.A. 5:12-124 et seq. (L. 1977, c. 110, §§ 124-130), the Legislature defined and criminalized participation in "racketeer-influenced and corrupt organizations." Shortly thereafter the Legislature determined that "in order to safeguard the public interest, effective criminal and civil sanctions are needed to prevent, disrupt and eliminate the infiltration of organized crime type activities which are substantial in nature into the legitimate trade or commerce of this State," N.J.S.A. 2C:41-1.1(c), and adopted a broad anti-racketeering statute apparently modeled after the comparable provisions of federal law.[11] These enactments manifest an *259 obvious concern by the Legislature over the existence and danger of organized criminal activity.
Against this background, no real doubt as to the meaning of N.J.S.A. 2C:44-1(a)(5) is possible. To interpret the language as defendant does is inconsistent with the specific legislative history of the provision; with the proper focus of the sentencing process provided under the Code; with well-settled principles of sentencing philosophy, and with the general legislative response to the existence and threat of organized crime. The application by the State is granted. The State may introduce testimony to establish that there is a substantial likelihood that defendant is involved in organized criminal activity, notwithstanding that the offenses of which he has been convicted are not related to such activity.

II. Appropriate Burden of Proof
Neither the applicable rules, R. 3:21-2, 3:21-4, the commentary thereto, nor any reported New Jersey decisions specifically address the question of the appropriate burden of proof applicable to the sentencing hearing. Some guidance, however, is afforded by the recent decision in United States v. Fatico, 603 F.2d 1053 (2d Cir.1979) (Fatico II). The procedural history of that case as outlined by the Court of Appeals should be set forth in full.
Precipitating the first appeal, which was by the Government, was Judge Weinstein's holding that, although membership in and ties to organized crime are material facts to be considered in sentencing, he would exclude as hearsay involving Due Process and Confrontation Clause limitations any evidence presented through an agent of the Federal Bureau of Investigation (FBI) from a reliable but confidential informer who was allegedly a member of the same New York organized crime "family." United States v. Fatico, 441 F. Supp. 1285 (E.D.N.Y. 1977). This court agreed that "[t]he Due Process Clause is plainly implicated at sentencing," United States v. Fatico, 579 F.2d 707, 711 (2d Cir.1978) (Fatico I), but noted generally that it did not necessarily follow that Due Process required all the procedural safeguards and strict evidentiary limitations of the criminal trial itself. And we held specifically that Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), permitting reliance on hearsay information even though the defendant could not confront or cross-examine the witnesses who supplied the information, was still viable *260 despite Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (plurality opinion), which held that Due Process guaranteed against the imposition of the death penalty on the basis of information not disclosed at all. Thus we stated that:
Due Process does not prevent use in sentencing of out-of-court declarations by an unidentified informant where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means. Thus, the trial court erred in excluding the agent's testimony about the informer's declaration once the Government represented that it would produce the specified corroboration.
579 F.2d at 713 (footnotes omitted). Accordingly, we reversed the district court's exclusion of the evidence and remanded the cause for sentencing proceedings, but at the same time specifically stated that "the weight given to the informer's declarations and the assessment of credibility are matters for the sentencing court." Id. at 713 n. 14.
On remand, the district court held an evidentiary sentencing hearing at which the Government called ten witnesses, seven of whom were law enforcement agents (four with the FBI). The law enforcement officers' testimony indicated that seventeen different informers had told them that appellant and his brother were long-time, active members of the Gambino family. The Gambino family is one of the five active organized crime families operating in the greater New York City metropolitan area. There was also information to the effect that appellant was a "made" member, that is, one who has officially been initiated as a full-fledged member of the family, not born into it but not merely associated with it. Largely on the strength of this testimony, which the court found "highly probative," United States v. Fatico, 458 F. Supp. 388, 412 (E.D.N.Y. 1978), the court, after numerous holdings of law, said: "While we must remain dubious of any conclusions based upon hearsay, the Government's proof here meets the rigorous burden of `clear, unequivocal and convincing evidence.' The probability is at least 80% that defendant is an active member of an organized crime family." Id. [Fatico II, 603 F.2d at 1054-1056 (footnotes omitted).]
On the second appeal Fatico argued, inter alia, that the proper burden of proof at the hearing was upon the Government and was proof "beyond a reasonable doubt." In affirming the trial court the Court of Appeals said:
... we do not agree that the burden of proof on the Government should be "beyond a reasonable doubt." Such a standard would turn sentencing hearings into second trials. As Judge Friendly said of sentencing hearings in Hollis v. Smith, 571 F.2d 685, 693 (2d Cir.1978), although expressly noting Judge Weinstein's opinion leading to Fatico I, 441 F. Supp. 1285, "[t]here is no authority binding upon us which holds that the procedure in proceedings relating solely to punishment, even when an additional fact has to be established, must conform precisely to those in proceedings relating to guilt, and we see no basis in principle for so holding." [Fatico II, 603 F.2d at 1057.]
*261 Notwithstanding the failure of the Fatico court expressly to articulate the appropriate burden of proof, its rejection of the "beyond a reasonable doubt" standard and its affirmance of the findings of the trial court clearly imply that the proper standard is "clear and convincing evidence." The rationale of this conclusion is consistent not only with fundamental concepts of due process but also with the philosophy of State v. Kunz, 55 N.J. 128 (1969), the decision which established our present sentencing procedure.
The ability of trained judges to exclude from their consideration irrelevant or improper evidence and materials which have come to their attention and to so certify for appellate purposes, has been recognized throughout our law. We have no reason to doubt that it may properly be applied in the field of sentencing.
The sentencing hearing, as we have outlined it, will fairly protect the rights of the defendant as well as the State and, conducted in commonsensible and flexible fashion, will not entail any undue delays or undue burdens on the judicial system. The probation report, when accurate and adequate, will as a practical matter generally remain unchallenged. Even where it is challenged, inquiry may quickly disclose that the challenge relates to matter of insufficient importance to warrant the taking of proof and, in such event, the trial judge may disregard the challenged matter and so declare. It is only in the occasional instance where the challenged matter is crucial to the sentencing process that any further step will be called for but, clearly, here the risk of injustice is far too great to proceed without proof. There may be additional incidental procedural questions but they can readily be dealt with as they arise from time to time. [Kunz, 55 N.J. at 145-6.]
The emphasis in Kunz on fairness and flexibility supports the conclusion that some intermediate standard of proof, more than a mere preponderance and less than "beyond a reasonable doubt," would be appropriate at a sentencing hearing. The "clear and convincing evidence" standard is well known in our law, and generally applies in cases "that involve circumstances or issues that are so unusual or difficult that proof by a lower standard will not serve to generate confidence in the ultimate factual determination." In re Polk License Revocation, 90 N.J. 550, 568 (1982). This standard also applies in disciplinary or disbarment proceedings involving attorneys, because of the "serious consequences" resulting from such proceedings. In re *262 Sears, 71 N.J. 175, 197 (1976); see also In re Pennica, 36 N.J. 401 (1962); In re Rachmiel, 90 N.J. 646, 661 (1982).
Nor is this standard unknown to the criminal law. N.J.S.A. 2C:20-7(b)(2) permits the drawing of an inference of guilty knowledge from evidence clearly and convincingly shown to the court that a defendant has received stolen property in another transaction within a year preceding the transaction charged. State v. Humphrey, 183 N.J.Super 580, 584-5 (Law Div. 1982). Additionally a defendant must establish by clear and convincing evidence the defense of ignorance or reasonable reliance. N.J.S.A. 2C:2-4(c).
The "clear and convincing evidence" standard is a familiar and workable concept that does justice both to fundamental principles of fairness and due process and to the necessary flexibility inherent in a sentencing procedure. Accordingly the State will bear the burden of establishing by clear and convincing evidence that there is a substantial likelihood that defendant is involved with organized criminal activity.

III. Relaxation of the Rules of Evidence
There is no constitutional impediment to the consideration of any reliable information presented in the sentencing procedure. In construing a federal statute,[12] which provides "no limitation ... on the information concerning the background, character and conduct of a person convicted of an offense which a court of the United States may receive and consider," several courts have approved the use of responsible unsworn or "out-of-court" information, providing that the defendant is given the opportunity to review and meet any factual assertions that the court will consider. Moore v. United States, 571 F.2d 179, 182 (3d. Cir.1978) ("This case is controlled not by rules of procedure, but rather by principles of fairness articulated in cases dealing with the due process limitation on *263 the use by a sentencing judge of false or unreliable data about a defendant"); see also United States v. Fatico, 579 F.2d 707, 711 (2d Cir.1978) (Fatico I); United States v. Harris, 558 F.2d 366 (7th Cir.1977); United States v. Cardi, 519 F.2d 309 (7th Cir.1975).
The seminal decision in this area is Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Upholding the procedural policy of the New York courts, which permitted the trial judge to consider at sentencing information inadmissible under the rules of evidence, the court noted:
Tribunals passing on the guilt of a defendant always have been hedged by strict evidentiary procedural limitations. But both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and type of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law ...
In addition to the historical basis for different evidentiary rules governing trial and sentencing procedures there are sound practical reasons for the distinction. In a trial before verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused. Rules of evidence have been fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged. These rules rest in part on a necessity to prevent a time consuming and confusing trial of collateral issues. They were also designed to prevent tribunals concerned solely with the issue of guilt of a particular offense from being influenced to convict for that offense by evidence that the defendant had habitually engaged in other misconduct. A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant  if not essential  to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial. [Williams, 337 U.S. at 246-247, 69 S.Ct. at 1082-1083, 93 L.Ed. at 1341-1342 (footnotes omitted).]
Concepts individualizing punishment in modern society have made it all the more necessary that the restrictive rules of evidence applicable to a trial should not deny a sentencing judge the opportunity to obtain the information required in his *264 task of sentencing. State v. Green, 62 N.J. 547, 566 (1973); see also State v. Kunz, 55 N.J. 128 (1969).
Subject to principles of fundamental fairness and the requirement that defendant be afforded the opportunity to be heard and to meet any factual allegations that are presented against him, there is no need to restrict the State's presentation at the sentencing hearing to testimony admissible under the rules of evidence. The court may consider any evidence which, from its content, nature and manner of presentation is inherently reliable, trustworthy and credible. The State shall file with the court and with defendant a formal proffer as to the witnesses it intends to call, the substance of their testimony and the nature and content of any nontestimonial information the State proposes to adduce. Defendant will be afforded a reasonable period of time to review the proffer prior to the hearing and, of course, the opportunity to present appropriate evidence.
NOTES
[1] This opinion formalizes an oral determination rendered March 2, 1984.
[2] The benefit offered was in excess of $200.
[3] "Knowingly" with respect to the bribery, N.J.S.A. 2C:2-2(c)(3); "purposely" with respect to the attempt to offer a gift, N.J.S.A. 2C:5-1(a)(3).
[4] Assembly Bill No. 3282, April 7, 1975 p. 141; see also sponsor's statement, p. 185.
[5] Assembly Bill No. 642, February 19, 1976.
[6] L. 1978, c. 95, enacted August 10, 1978, effective September 1, 1979.
[7] Senate Bill No. 738, January 26, 1978; Assembly Bill No. 229, prefiled into the 1978 session.
[8] N.J.S.A. 2C:44-1(a): In determining the appropriate sentence to be imposed on a person who has been convicted of an offense, the court may properly consider the following aggravating circumstances:

(1) The nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner;
(2) The gravity and seriousness of harm inflicted on the victim, including whether or not the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, disability, ill-health, or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance;
(3) The risk that the defendant will commit another offense;
(4) A lesser sentence will depreciate the seriousness of the defendant's offense because it involved a breach of the public trust under chapters 27 and 30, or the defendant took advantage of a position of trust or confidence to commit the offense;
(5) There is a substantial likelihood that the defendant is involved in organized criminal activity;
(6) The extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted;
(7) The defendant committed the offense pursuant to an agreement that he either pay or be paid for the commission of the offense and the pecuniary incentive was beyond that inherent in the offense itself;
(8) The defendant committed the offense against a police or other law enforcement officer, correctional employee or fireman, acting in the performance of his duties while in uniform or exhibiting evidence of his authority, or the defendant committed the offense because of the status of the victim as a public servant;
(9) The need for deterring the defendant and others from violating the law.
[9] The reference in 2C:44-1(a)(6) to the "seriousness of the offenses of which he has been convicted" would appear to refer to prior "offenses" rather than the "offense" for which the defendant is being sentenced.
[10] Senate Bill No. 738, January 26, 1978, p. 143.
[11] L. 1981, c. 167; see 18 U.S.C. § 1961.
[12] 18 U.S.C. § 3577.