278 N.J. Super. 557 (1995)
651 A.2d 1051
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT/CROSS-RESPONDENT,
v.
MICHAEL P. MEGARGEL, DEFENDANT-RESPONDENT/CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 27, 1994.
Decided January 23, 1995.
*558 Before Judges STERN, KEEFE and HUMPHREYS.
Teresa M. Burzynski, Assistant Prosecutor, argued the cause for appellant/cross-respondent (Edward F. Borden, Jr., Camden County Prosecutor, attorney).
Dennis Wixted argued the cause for respondent/cross-appellant (Sufrin, Zucker, Waller & Wixted, attorneys; Mr. Wixted and Jeffrey C. Zucker, of counsel and on the brief).
The opinion of the court was delivered by HUMPHREYS, J.S.C. (temporarily assigned).
Daniel Harris was walking to his girlfriend's house in Camden around 1:00 a.m. on February 25, 1991. He was suddenly attacked and then abducted by four men. Harris was forcibly taken by car some distance to a vacant lot. He was beaten, terrorized, *559 shot at and robbed. Eventually, he feigned unconsciousness and the criminals left.
Lamont Lee and Michael P. Megargel were arrested and indicted for: first degree kidnapping, N.J.S.A. 2C:13-1b(1); first degree robbery, N.J.S.A. 2C:15-1; possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4a; unlawful possession of a handgun, N.J.S.A. 2C:39-5b; possession of hollow nose bullets, N.J.S.A 2C:39-3f; second degree aggravated assault, N.J.S.A. 2C:12-1b(1); unlawful possession of a shotgun, N.J.S.A. 2C:39-5c(1); and conspiracy to commit first degree robbery, N.J.S.A. 2C:5-2 and 2C:15-1.
A jury convicted Lee of all charges (except that Lee was convicted of third degree aggravated assault rather than second degree aggravated assault).
The jury acquitted Megargel of all charges except first degree kidnapping.
The trial judge conducted a Graves Act hearing, N.J.S.A. 2C:43-6d, and found that the Act applied to both defendants. The judge sentenced Lee to a prison term of twenty-seven years, nine years without parole eligibility, for first degree kidnapping, and a consecutive five year prison term for unlawful possession of a handgun. Lee was sentenced on the armed robbery conviction to an eighteen year prison term, with a six year parole disqualifier, to run concurrent with the other sentences imposed. All other convictions were merged into his conviction for first degree robbery. Lee will probably be paroled shortly after serving his nine year parole disqualifier term on the kidnapping conviction.
As to Megargel, the judge stated that he was "clearly convinced" that the mitigating factors "substantially" outweighed the aggravating factors and that the "interest of justice" required that Megargel be sentenced as if he were convicted of second degree kidnapping. See N.J.S.A. 2C:44-1f(2); N.J.S.A. 2C:13-1c. The judge sentenced Megargel to a seven year prison term with a *560 three year parole disqualifier. Megargel will be eligible for parole upon service of his three year parole disqualifier term.
Lee appealed his conviction and sentence. We affirmed in a separate opinion.
The State appeals Megargel's sentence contending that the trial judge abused his discretion in sentencing Megargel as a second degree offender. We affirm this sentence for the reasons stated in Sections I, II and III of this opinion.
Megargel cross-appeals contending that the judge erred in finding that the Graves Act applied to him. We affirm that finding in Section IV of this opinion.

I
The judge's sentence of Megargel as a second degree offender was authorized by the following section of the Code of Criminal Justice.
Criteria for Withholding or Imposing Sentence of Imprisonment.
........
f. Presumptive Sentences.
........
(2) In cases of convictions for crimes of the first or second degree where the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands, the court may sentence the defendant to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted. If the court does impose sentence pursuant to this paragraph, or if the court imposes a non-custodial or probationary sentence upon conviction for a crime of the first or second degree, such sentence shall not become final for 10 days in order to permit the appeal of such sentence by the prosecution.
[N.J.S.A. 2C:44-1(f)(2)].
The State contends that the sentencing judge should not have sentenced Megargel under this section since: (1) the judge's findings as to the aggravating and mitigating factors were not supported by the evidence; (2) the judge improperly weighed the aggravating and mitigating factors; and (3) the interest of justice *561 does not demand that the defendant be sentenced as if convicted of a second degree crime.
The judge found that only one aggravating factor was applicable to Megargel, i.e., the need to deter him and others from violating the law. N.J.S.A. 2C:44-1a(9). The judge found six mitigating factors: (1) the defendant's lack of a prior conviction; (2) the defendant's conduct was a result of circumstances unlikely to recur; (3) the character and attitude of the defendant indicate he is unlikely to commit another offense; (4) the defendant is likely to respond affirmatively to probationary treatment; (5) the willingness of the defendant to cooperate with law enforcement authorities; and (6) the defendant's conduct was substantially influenced by another person more mature than the defendant. See N.J.S.A. 2C:44-1b.
The State contends that the judge erred in failing to find two additional aggravating factors, namely, the nature and circumstances of the offense and the defendant's role therein, including whether or not it was committed in an especially heinous, cruel or depraved manner; and the gravity and seriousness of the harm inflicted on the victim. N.J.S.A. 2C:44-1a(1)(2).
The State also contends that the judge erred in finding the above mitigating factors, although the State concedes that there is some evidence supporting the judge's conclusion that the eighteen year old Megargel was influenced by Lee, an older and more mature person.

II
Appellate review of sentences is quite limited. Our function is confined to the following: First, was the exercise of discretion by the sentencing court based upon findings of fact grounded in competent, reasonably credible evidence? Second, did the sentencing court apply correct legal principles in exercising its discretion? Third, was the application of the facts to the law such a clear error of judgment that it shocks the judicial *562 conscience? State v. Roth, 95 N.J. 334, 363-364, 471 A.2d 370 (1984).
Put another way, "[t]he test, then, is not whether a reviewing court would have reached a different conclusion on what an appropriate sentence should be; it is rather whether, on the basis of the evidence, no reasonable sentencing court could have imposed the sentence under review." State v. Ghertler, 114 N.J. 383, 388, 555 A.2d 553 (1989).
An appellate court "must avoid the substitution of appellate judgment for trial court judgment." Roth, supra, 95 N.J. at 365, 471 A.2d 370. Hence, "[w]hen conscientious trial judges exercise discretion in accordance with the principles set forth in the Code and defined by us today, they need fear no second-guessing." Ibid.

III
The judge set forth his sentencing reasons at length. He said:
The presentence report shows defendant was 18 at the time of the crime, he's now 20, he's single, has no children, he's a high school graduate, with apparent plans for college. His health is good, there's no indication of substance abuse. His work record is fairly extensive. In fact, the presentence report says that he worked at his father's company for up to ten years. Considering his youth that's truly remarkable. And [he] also worked at True Value Hardware, the Winslow shopping center, [and] Nova Construction Company. He has no prior convictions.
I've reviewed the aggravating and mitigating circumstances set forth in 2C:44-1. And I've considered the arguments from all parties concerning the applicability thereof. In choosing which aggravating and mitigating factors are applicable, I'm mindful that defendant was found not guilty of all charges except first degree kidnapping. And as counsel has mentioned today and in the brief, in Rodgers, State v. Rodgers, 236 Super., 378 Appellate Division, 1989 affirmed by our Supreme Court, 124 New Jersey, 113, 1991, although defendant may be vicariously liable for crimes of an accomplice, he is not vicariously liable for aggravating factors not personal to him. In light of the evidence in the case and the multiple acquittals[,] it is probably that Mr. Megargel was found to be an accomplice to the removal of the victim for the purpose of robbing him and the subsequent failure to release the victim unharmed in a safe place. Clearly[,] the jury took a very different view of Mr. Megargel from that which they took of co-defendant, Lee. I'm persuaded that the jury verdict shows the desire to extend leniency to Mr. Megargel.

*563 Moreover, I will not evaluate the aggravating and mitigating factors as if I were deciding a defense motion for judgment of acquittal. That is to say I will not sift through the evidence and give the State the benefit of all favorable evidence and inferences. I cannot weigh the factors as if defendant had been convicted of all the offenses for which he was, in fact, found not guilty.
There is an interesting question that is apparently still fairly open in the law[:] ... what quantum of proof must exist for a judge to apply an aggravated factor. The only case that I found that spoke to it was a law division opinion by then Judge Perskie in a case called [State v. Merlino, 208 N.J. Super. 247, 505 A.2d 210 (Law Div. 1984)].... In there Judge Perskie said a judge has to be persuaded by clear and convincing evidence of the aggravating factors. The statute is not helpful, the other case law is not helpful. Clearly[,] I must be satisfied by at least a preponderance of the evidence and perhaps even the heavier burden.
I've considered all of the information available to me from the trial, the presentence report, the submissions of counsel, including the letters, and I'll talk more about them in a minute. In the present matter I find that Aggravating Factor 1 is inapplicable to Mr. Megargel, although I concluded it was applicable to defendant Lee. That is because the force over and above that which is inherent in the crime's definitions occurred in the context of the armed robbery or assault. Specifically the shooting at the victim while he was being robbed, handcuffing, stripping him of his clothes, playing the laser light of the shotgun on his body to terrorize him, viewing the kidnapping component as separately as proofs allow I'm not convinced by even a preponderance of the evidence that this offense, the kidnapping offense was committed in an especially heinous, cruel or depraved manner. In fact, the only aggravating factor applicable to defendant Megargel is the need to deter him and others from violating the law. Clearly the legislature views kidnapping as an exceptionally serious crime. And I don't mean to minimize that.
I find several mitigating factors applicable. The first is that defendant has no prior history of convictions. The references to Gary Meyer's testimony and the vague references therein that he and Mr. Megargel had run from the police on prior occasions really does nothing to negate the applicability of that factor. I'm also persuaded that the character and attitude of Mr. Megargel indicate that he is unlikely to commit another offense. I spoke about that in another context and I speak of it again.
I've received ... somewhat over 40 letters, but it's not the quantity really that's significant, it's the quality. As a judge we get letters every day from people and you have to try and learn as best human nature allows which ones are significant and can be relied upon and which ones are simply fabrications or pro forma. I was truly impressed by the quality of letters here. They struck a common theme, that Mr. Megargel is young, impressionable, trusting, somewhat naive. I was impressed by the scope of the people who wrote, the aunts, the cousins, the friends, Mr. and Mrs. Megargel are separated or divorced[,] I guess [,] and are each intending to marry again, and their intended spouses wrote, the parents of one of the intended spouses wrote, the former husband of the woman who I guess is going to marry Mr. Megargel wrote on [his] behalf. It was an extremely impressive *564 network. And the letter from Mrs. Megargel is this is held  you know, is indicative and impressive from an early age he's gone out of his way and helped others doing odd jobs and these are themes picked up by I think the Candelas mention it, he was always willing to help with chores, with farmers mowing and cutting and snow, farmers crops, a kid with cerebral palsy, he befriended a girl who was an amputee, he was open to and, you know, kids can be cruel, you know. He wasn't. And it goes on and on. Poor choice of companions, poor judgment, going along with the crowd. Naive. Impressed with the badge and the authority. Can't imagine knowingly going out to commit this crime. Clearly out of character. Error in judgment. Didn't know what he was getting into. Out of character. People who trusted him with keys to their home, with their vehicles, got in the car with the wrong person. Nobody can argue with that. Does not seem like the type of person who would hurt someone else, known him for years, peaceful, kind, gentle, never been involved, honest, nonviolent, caring, trust him completely around my son, naive, this was not typical behavior, people offering him jobs, completely out of character. They go on and on. They're all like that and they're all sincere and thoughtful letters. And any who would say that I should not consider those letters or ignore them does not understand my role as a judge or indeed the legislative factors that are set out. The  one of the common themes or some of the common themes is that Mr. Megargel is young and impressionable, somewhat naive and I believe that the negative aspects of these characteristics, because they're not all negative, will clearly dissipate over time as a result of natural maturity and indeed as a result of the present convictions. The defendant's character and reputation as indicated in these letters is of someone loved and trusted and not normally inclined to illegal activity and I believe them. For similar reasons I believe defendant's conduct was the result of circumstances unlikely to occur to recur.

I am convinced that when Megargel left that gas station with Lee and perhaps another person or we have at least three versions of who was in that car, he was unaware that anything like a kidnapping was going to occur. Now, maybe he thought he was going out for some thrill seeking, maybe he thought something was going on, but I don't believe he ever thought that it would evolve into something as severe as it did. Had he been left to his own devices none of these crimes would have been committed. I'm persuaded to that beyond a reasonable doubt. A scheme to jump out on people on the street in the middle of the night, flash a badge, tell the victim he's under arrest does not originate with Mr. Megargel. And if you believe Mr. Megargel's statements that he was totally unfamiliar with Camden, he's hardly about to initiate the idea of what occurred here. On the contrary. It originated with Mr. Lee. I'm satisfied of that.
I believe defendant is particularly likely to respond affirmatively to probationary treatment for many of the reasons I've stated and because he has no prior contact with the juvenile or adult criminal system. He has an extremely strong support network of friends and family.
Nevertheless, as I indicated, in regard to Mr. Lee, probation is not in the cards for a Graves Act offense. And again, this factor here is not given great weight. To some extent defendant showed a willingness to cooperate with law enforcement authorities. Upon his arrest he almost immediately gave what appears to be a full *565 statement of the events to Detective Busbee. That statement, although partially exculpatory, was also clearly inculpatory. Indeed it contained the very seeds of his conviction as an accomplice for kidnapping.
And finally but perhaps most importantly I am persuaded that the conduct of this youthful defendant was substantially influenced by defendant Lee who was not only more mature than the defendant but who held a position of authority that defendant respected and indeed relied upon. Defendant Megargel believed Lee was a police officer and accordingly he was more willing to accompany him into the unknown. I believe that when Megargel was in the car with the three or four other perpetrators he was the least determinative factor of what was going on in those circumstances. In all probability there came a time when he wanted to disassociate himself with the criminal activity but simply did not have the fortitude to do so.
* * * * * * * *
Weighing the aggravating factor against the mitigating factors on a qualitative basis I'm clearly convinced that the mitigating factors substantially outweigh the aggravating factor. In the interest of justice I sentence the defendant to a term of incarceration as if he were convicted of a second degree offense. Under N.J.S.A. 2C:44-1f(2). Once that decision is made to sentence a defendant one degree lower, the case law surprisingly provides very little guidance as to where within that lower range an appropriate sentence would lie. At most there is some indication in one or two of the cases that the sentence should be consistent with the initial determination to go into the lower range. On that basis it would not be appropriate to sentence defendant in the upper reaches of the second degree range.
Accordingly, defendant is sentenced to a seven year term in the New Jersey State Prison system, and by virtue of the Graves Act three years of that must be without parole eligibility. He is further sentenced to a $100.00 Violent Crimes Compensation Board penalty. (Emphasis added).
We find no error in the trial judge's carefully crafted determination and weighing of the aggravating and mitigating factors. We are mindful that the Prosecutor has a different version of Megargel's involvement based primarily on the testimony of Harris that Megargel was one of the persons who beat and terrorized him. However, Megargel testified that his only participation was to drive the car, and that he drove as the others ordered him to. The jury acquittal of Megargel on the assault, robbery and firearm charges indicates that the jury did not accept Harris' testimony. The judge's sentencing reasons indicate that he viewed the evidence as the jury did.
The judge's sentencing reasons reflect a conscientious and comprehensive analysis of the facts, the aggravating and mitigating *566 factors and the applicable legal principles. The judge was in a good position to make an accurate analysis since he was the trial judge. He heard the testimony of the witnesses, including the testimony of Harris, Lee and Megargel. His findings as to the facts and the meaning of the jury's verdict must therefore be given great weight.
This is not to say that our sentence would have been the same if we were the sentencing court. First degree kidnapping is a very serious crime as shown by its enhanced penalty. The New Jersey Code of Criminal Justice in N.J.S.A. 2C:1-1 et seq., requires in formulating a sentence an "inexorable focus upon the offense" and less emphasis on the offender. Roth, supra, 95 N.J. at 367, 471 A.2d 370; State v. Hodge, 95 N.j. 369, 376, 471 A.2d 389 (1984). See also State v. Mirakaj, 268 N.J. Super. 48, 632 A.2d 850 (App.Div. 1993). The sentencing judge, however, did not ignore the offense. He recognized that "the legislature views kidnapping as an exceptionally serious crime. And I don't mean to minimize that."
We also do not minimize this dreadful crime. However, notwithstanding the seriousness of the crime, we cannot find in the face of the judge's logical and comprehensive reasons that no reasonable sentencing judge could have imposed this sentence. See Ghertler, supra, 114 N.J. at 388, 555 A.2d 553.
The trial judge's finding as to the interest of justice was not plucked out of thin air. The judge analyzed the meaning of the jury verdict corroborated by his view as the trial judge. He concluded that Megargel had a limited involvement in the criminal enterprise. The judge found many strong and significant mitigating factors as articulately described in his sentencing reasons. The foregoing offers strong support for the judge's exercise of sentencing judgment and discretion in reaching his conclusion as to the interest of justice. As a reviewing court, we must respect such a reasoned exercise of judgment by a conscientious sentencing judge.
*567 Moreover, this is not a case such as Roth, supra, in which the sentencing judge had imposed a probationary non-custodial sentence for aggravated sexual assault at knifepoint of a young mother strolling with her child on a public street. Nor is this a case such as Hodge, supra, in which the sentencing judge imposed probation and a sixty-three day jail term for a defendant's repeated acts of sexual intercourse with his thirteen year old step-daughter, a first degree crime. In those cases, and in State v. Johnson, 118 N.J. 10, 570 A.2d 395 (1990) and State v. Jabbour, 118 N.J. 1, 570 A.2d 391 (1990), the Supreme Court found that the probationary sentences were incompatible with the presumption of imprisonment for such serious crimes. See N.J.S.A. 2C:44-1f(2).
Here the sentencing judge did not fail to follow the legislative policy of imprisonment for first and second degree crimes. The judge's sentence of Megargel to seven years in prison with a three year parole disqualifier comports with the Code's policy that "[d]efendants who commit serious crimes should expect to spend time in prison." Jabbour, supra, 118 N.J. at 8, 570 A.2d 391.
The issue here is not jail or freedom. If the sentencing judge had not sentenced Megargel as a second degree offender, the judge would probably have imposed the minimum sentence for the first degree crime. This would have been fifteen years with a five year parole ineligibility term. The defendant as a first offender would very likely have been paroled upon service of the five year ineligibility term.
Thus the central issue is whether we should reverse a sentencing judge's carefully reasoned determination that this defendant, an impressionable, trusting, and naive eighteen year old first offender, whose involvement in the crime was much less than the others, should serve three rather than five years in state prison. Our judicial conscience is not shocked by three years rather than five. A reversal would be second guessing the sentencing judge's determination by substituting our judgment for his.

*568 IV
The record contains sufficient evidence under the applicable preponderance of the evidence standard, N.J.S.A. 2C:43-6d, to uphold the trial judge's Graves Act findings that (1) Megargel knew beforehand or should have known that Lee would use or be in possession of a firearm during the crimes, and (2) Megargel was an accomplice of Lee. See State v. White, 98 N.J. 122, 131, 484 A.2d 691 (1984).
The jury's acquittal of Megargel for crimes other than kidnapping is not inconsistent with the judge's findings as to the applicability of the Graves Act. The judge's findings were based on a lower standard of proof. See State v. Stewart, 96 N.J. 596, 607, 477 A.2d 300 (1984). Furthermore, the jury may have found Megargel to be an accomplice of Lee in the removal of Harris for the purpose of robbing him and in the subsequent failure to release him unharmed and in a safe place. See the judge's sentencing reasons set forth in this opinion.
We affirm on both appeals.
KEEFE, J.A.D., dissenting.
I dissent from the conclusion arrived at by the majority in Part III of its opinion because in my view the sentencing judge failed to apply correct legal principles when he downgraded defendant's conviction for first degree kidnapping for sentencing purposes to a crime of the second degree. Contrary to the majority's suggestion, my disagreement does not focus on the sentencing judge's exercise of discretion. A sentencing judge's failure to consider a legal principle essential to the sentencing construct created by the Legislature cannot be excused on the ground that it was an exercise of discretion. State v. Roth, 95 N.J. 334, 363, 471 A.2d 370 (1984) (citing State in the Interest of C.A.H. and B.A.R., 89 N.J. 326, 446 A.2d 93 (1982); In re Trantino Parole Application, 89 N.J. 347, 373, 446 A.2d 104 (1982); In re Polk License Revocation, 90 N.J. 550, 449 A.2d 7 (1982)). Nor can the oversight be justified by a conclusion that the end result is close *569 enough, i.e., a three year minimum term is not much less than a five year term and, thus, does not "shock the judicial conscience." The shock the conscience test is not used until the reviewing court is satisfied that the trial court "sentenced in accordance with the guidelines[.]" Roth, supra, 95 N.J. at 364, 471 A.2d 370. As pointed out by our Supreme Court in State v. Hodge, 95 N.J. 369, 471 A.2d 389 (1984), "the severity of the crime is now the single most important factor in the sentencing process." Id. at 378-79, 471 A.2d 389. Thus, "the sentence imposed must reflect the Legislature's intention to focus on the degree of the crime itself as opposed to other factors personal to the defendant." Id. at 377, 471 A.2d 389. Borrowing from the Supreme Court's language in Hodge, I find that "focus missing." Ibid.
The "inexorable focus" on the severity of the offense, Id. at 376, 471 A.2d 389, should not be lost when the sentencing judge is considering downgrading the offense for the purpose of sentencing. As the Roth court pointed out,
When weighing the factors involved in a first or second degree offense, the court may become "clearly convinced" that the mitigating factors "substantially outweigh" the aggravating ones. If that is so and the interest of justice demands it, 2C:44-1f(2) gives the court the authority to sentence the defendant to a prison term appropriate for the crime one degree lower than that of the conviction.
[Roth, supra, 95 N.J. at 359, 471 A.2d 370 (emphasis added).]
Although no court has yet articulated what is meant by the phrase "where the interest of justice demands" in the context of a downgraded sentence after trial, I believe the analysis must be very nearly identical to that which is done when a trial judge is considering the "in or out" determination, as in Roth, under 2C:44-1d. That is, there is much more to the weighing process than a simple quantitative determination that the mitigating factors substantially outweigh the aggravating factors. Rather, a qualitative analysis of the factors must be undertaken with the proper weight being assigned to each factor, representing "a function of its gravity in relation to the severity of the offense." Id. at 368, 471 A.2d 370.
*570 If this were not so, I would assume that the Legislature simply would have required a sentencing judge to be clearly convinced that the mitigating factors substantially outweigh the aggravating factors, without requiring an additional inquiry into the "demands" of "the interest of justice." 2C:44-1f(2). Clearly, as the Roth court points out, the statute provides a two step process. Roth, supra, 95 N.J. at 359, 471 A.2d 370; see also State v. Jones, 197 N.J. Super. 604, 607, 485 A.2d 1063 (App.Div. 1984) (Trial court's sentencing defendant as a third degree offender, notwithstanding her conviction for second degree theft, reversed because the trial judge not only weighed the factors in a "numerical way eschewed by Roth, ... but also failed to give sufficient emphasis to the offense itself and never dealt with the important question of whether the interests of justice demanded such a downgrade.").
In State v. Mirakaj, 268 N.J. Super. 48, 632 A.2d 850 (App.Div. 1993), this court affirmed a trial judge's refusal to sentence the defendant, who pled guilty to aggravated manslaughter, as if she had pled guilty to a second degree offense. In doing so we held:
Although the record could support a finding that the mitigating sentence factors substantially outweigh the aggravating, it does not require a finding that the "interest of justice" demands that defendant be sentenced as a second degree offender. The Legislature has established a thirty year maximum and a twenty year presumptive term for aggravated manslaughter, rather than the twenty year maximum and fifteen year presumptive term applicable to other first degree offenses, which reflects a legislative judgment that this is an especially serious first degree offense. The legislative judgment suggests that a trial court should be cautious in imposing downgraded sentences for aggravated manslaughter.
[Id. at 50-51, 632 A.2d 850.]
Kidnapping, like aggravated manslaughter, was treated differently by the Legislature for sentencing purposes. Where the victim is sixteen years or older, as in this case, and the conviction is for first degree kidnapping, the ordinary prison term is between fifteen and thirty years, with a presumptive term of twenty years. N.J.S.A. 2C:13-1c; N.J.S.A. 2C:44-1f(1)(a). This is in contrast to the usual first degree offense, where the ordinary term is between ten and twenty years with a presumptive sentence of fifteen years. N.J.S.A. 2C:43-6a(1); N.J.S.A. 2C:44-1f(1)(b). Our Supreme *571 Court recently reiterated this theme in State v. Brent, 137 N.J. 107, 120, 644 A.2d 583 (1994):
It is evident that the Legislature intended harsh treatment for kidnappers; it is further evident that by maximizing the kidnapper's incentive to return the victim unharmed, the Legislature realized the risk of harm attendant upon isolation is the principal danger of the crime.
[(quoting State v. Masino, 94 N.J. 436, 446, 466 A.2d 955 (1983)).]
In this case, the trial judge paid more attention to the counts of the indictment that the jury acquitted the defendant of than the elements of the offense for which he was convicted. I agree with the trial judge that the verdict exhibited the jury's "desire to extend leniency" to the defendant. For that reason little profit is gained from an analysis of what the jury found factually by acquitting the defendant of several charges. The jury may very well have believed everything Harris said about the defendant, but, nonetheless, elected to acquit defendant of some of the charges in a spirit of lenity. See, State v. Ragland, 105 N.J. 189, 204-05, 519 A.2d 1361 (1986); State v. Crisantos (Arriagas), 102 N.J. 265, 272, 508 A.2d 167 (1986); State v. Ingenito, 87 N.J. 204, 211-12, 432 A.2d 912 (1981).
On the other hand, it is clear by the verdict that the jury did not accept defendant's exculpatory explanation in its entirety. Regardless of whether defendant was convicted as a principal or an accomplice, the jury was satisfied that he acted with the requisite culpability to find that he "unlawfully", i.e. "by force, threat or deception," removed Harris "a substantial distance" "to facilitate commission" of the robbery. N.J.S.A. 2C:13-1b and d. In coming to that conclusion, the jury rejected Megargel's attempt to convince them that he had no idea that Lee and his friends were about to embark on any criminal behavior, and that he subsequently acted out of fright and under orders. The elements of the crime of first degree kidnapping simply do not correlate with defendant's position, or the trial judge's interpretation of his involvement.
Except for a passing acknowledgement that defendant was convicted of first degree kidnapping, the sentencing judge made *572 no effort to qualitatively analyze the mitigating factors in the context of the gravity of the offense, especially in light of the Legislature's clear intent to treat kidnapping differently from other first degree offenses. Rather, as in Hodge, supra, inordinate attention was placed on the "over 40 letters," that were written by relatives, friends, and family associates on defendant's behalf, describing him variously as somewhat immature, impressionable and naive.
After considering the one aggravating factor and the six mitigating factors applicable to this defendant, the judge said:
On a qualitative basis I'm clearly convinced that the mitigating factors substantially outweigh the aggravating factor. In the interest of justice I sentence the defendant to a term of incarceration as if he were convicted of a second degree offense.
[Emphasis added.]
It would appear from the judge's statement that he was under the impression that all that need be done under N.J.S.A. 2C:44-1f(2) is to evaluate the mitigating factors against the aggravating factors without considering those factors in the context of the gravity of the offense. At a minimum, defendant's conviction for an enhanced first degree offense would require the sentencing judge to consider whether a sentence in the normal range for ordinary first degree offenses (10 to 20 years) would be an appropriate downgraded sentence. The statute does not compel the judge to sentence one degree lower. Further, and more importantly, the judge made no effort to identify what considerations were made for his conclusion that "the interest of justice demands" sentencing this defendant as if he were convicted of a crime one degree lower. Although the majority concludes that the judge's finding as to the interest of justice was not "plucked out of thin air," I respectfully submit that no other conclusion can be drawn from this record. The majority's restatement of the judge's findings as to the mitigating factors is not the equivalent of having the judge make separate findings with respect to the interest of justice as required by the statute and Roth, supra. In any event, the mitigating factors relied upon here were not nearly *573 strong enough to carry this defendant from a presumptive twenty year prison term to a presumptive seven year term.
Thus, in my view the appropriate legislative policies and guidelines were not observed in the imposition of the sentence. I would remand for re-sentencing.