STATE OF NEW JERSEY, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT, v. JAMES A. HODGE, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.

Argued October 12, 1983—Decided February 7, 1984.

*Joyce E. Munkacsi,* Assistant Prosecutor, argued the cause for appellant and cross-respondent (*Richard S. Rebeck,* Middlesex County Prosecutor, attorney).

*Mark H. Friedman,* Assistant Deputy Public Defender, argued the cause for respondent and cross-appellant (*Joseph H. Rodriguez,* Public Defender, attorney).

*Victoria Curtis Bramson,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

O'HERN, J.

Defendant, Hodge, pleaded guilty to aggravated sexual assault, in violation of *N.J.S.A.* 2C:14–2(a), admitting he had committed acts of sexual intercourse with his stepdaughter, aged 13, over a year's time. The statute makes sexual contact of this sort a crime of the first degree when the victim is 13 to 16 years old and the offender has a supervisory role within the

household, even in the absence of force or violence, as in this case. *N.J.S.A.* 2C:14–2(a)(2)(c).

Defendant was a first offender, employed full-time and was supporting his wife and their natural daughter. The presentence report recommended that despite his status as a first offender, defendant should be imprisoned, in view of the victim's youth. In addition to the presentence report, the trial judge consulted a report from the Adult Diagnostic and Treatment Center, furnished under *N.J.S.A.* 2C:47–2, and reviewed interviews with the defendant's neighbors and doctors' evaluations.

The court formulated the sentence by balancing the aggravating and mitigating factors listed in *N.J.S.A.* 2C:44–1(a) and (b). The aggravating factors were the extreme gravity of the offense and the victim's age. The mitigating circumstances included the facts that defendant was a first offender and the forbidden conduct was unlikely to reoccur; defendant was likely to respond favorably to probationary treatment, was regularly employed, supported a family, and was well thought of by his peers; and the fact that the effect of imprisonment on his family would be severe.

Against this background, the trial judge sentenced Hodge to 63 days in prison, five years' probation, fines totalling $2,525.00, and a directive to undergo psychiatric care.

The State appealed the sentence pursuant to *N.J.S.A.* 2C:44–1(f)(2). The Appellate Division, in a divided opinion, affirmed the judgment of the trial court, noting that the "pertinent criteria for withholding or imposing a sentence of imprisonment involve a weighing of the aggravating and mitigating factors enumerated in *N.J.S.A.* 2C:44–1." Under the sentencing review standards of *State v. Whitaker,* 79 *N.J.* 503 (1979), the court confirmed that it should refrain from interfering with the sentencing function in the absence "of such shock to the judicial conscience as to be convincing that upholding the action reviewed would be 'manifestly unjust.'" *Whitaker,* 79 *N.J.* at 514

(quoting *Taweel v. Starn's Shoprite Supermarket*, 58 *N.J.* 227, 236 (1971)). The dissenting judge emphasized that the "crime is egregious" and the "mitigating factors are comparatively few," and that incarceration more accurately reflected the severity of the crime. In his view, the presence of mitigating factors might have justified a sentence appropriate to a second degree crime, under *N.J.S.A.* 2C:44–1(f)(2). The State appealed under *R.* 2:3–1(a), and the defendant petitioned for certification, challenging the State's right to appeal. We granted certification. 94 *N.J.* 517 (1983).

This case presents an additional issue not present in *State v. Roth*, 95 *N.J.* 334 (1984), also decided today. An amendment to *N.J.S.A.* 2C:44–1 that became effective in September 1981, redefined the presumption of imprisonment for all first and second degree crimes. *L.*1981, *c.* 290, § 40. Until shortly before defendant's sentencing, however, this provision read:

> d. Presumption of imprisonment. Where a statute defining a crime of the first or second degree provides that a presumption of imprisonment shall be applied upon conviction or where a statute outside the code defining an offense which would be a crime of the first or second degree under the code provides for a mandatory sentence, a presumption of imprisonment shall apply. The court shall deal with a person who has been convicted of such a crime by imposing a sentence of imprisonment unless, having regard to the character and condition of the defendant, it is of the opinion that his imprisonment would be a serious injustice which overrides the need to deter such conduct by others. [*L.*1979, *c.* 178, § 93.]

The aggravated sexual assault statute under which Hodge was charged did not expressly include a presumption of imprisonment. *L.*1979, *c.* 178, § 26.

In 1981, the Code was amended to provide a presumption of imprisonment for all first and second degree crimes:

> d. Presumption of imprisonment. The court shall deal with a person who has been convicted of a crime of the first or second degree by imposing a sentence of imprisonment unless, having regard to the character and condition of the defendant, it is of the opinion that his imprisonment would be a serious injustice which overrides the need to deter such conduct by others. [*N.J.S.A.* 2C:44–1(d), as amended by *L.*1981, *c.* 290, § 40.]

It is the State's position that the amendment merely clarified, but did not change the prior law. This contention is supported

by the Statement to Senate Committee Substitute for Senate, No. 1537 (January 2, 1981), which explained that the proposed amendment "clarifies that the code does set a presumption of imprisonment for crimes of the first or second degree."

Under the defendant's view, the original statute would read that there is a presumption only when another statute provides such presumption. Such a law would merely echo others and have no independent force of its own. There being no other provision, there is no echo. It is the State's view that the Legislature does not devise useless or meaningless statutes, *County of Monmouth v. Wissell,* 68 *N.J.* 35, 42 (1975), and that since the structure of the original statute included a presumption of non-imprisonment for third and fourth degree crimes, *N.J.S.A.* 2C:44–1(e), by implication there existed a presumption of imprisonment for first and second degree crimes.

 But the message is unclear. Statutes rendering behavior criminal and fixing the applicable penalties must do so in terms that cannot arguably be misunderstood and must be construed "so as to avoid the unfairness of arbitrary enforcement." *State v. Maguire,* 84 *N.J.* 508, 514 n. 6 (1980). We do so here and conclude that the 1981 amendment should not be applied retroactively to this case. *See State v. Jones,* 188 *N.J.Super.* 201 (App.Div.1983).

We find, however, that the undeniable thrust of the Code's sentencing structure even before the 1981 amendment was to create a fundamental change in the sentencing process.

In *Maguire,* decided before the 1981 amendment, we held that [u]ntil the enactment of the Code, the Legislature had not expressly identified the legitimate aims of punishment or established a consistent framework for guiding sentencing discretion. *State v. Ivan,* 33 *N.J.* 197, 200 (1960). * * * [W]e sought to corral the virtually unfettered sentencing discretion exercised by judges by identifying basic aims of criminal punishment, *Ivan, supra,* 33 *N.J.* at 200–202; by cataloging various aggravating and mitigating factors to be considered in fixing a sentence, *State v. Leggeadrini,* 75 *N.J.* 150, 156–59 (1977); * * * by requiring an express statement of reasons for the particular disposition * * * to facilitate meaningful appellate review.. * ` ˇ Despite these judicial efforts sentencing disparity continued to plague the administration of criminal justice.

In enacting the new Code, the Legislature has for the first time addressed directly the problem of sentence disparity. The Code not only identifies the permissible aims of punishment, but also establishes a general framework to guide judicial discretion in imposing sentences. [*Maguire,* 84 *N.J.* at 530–32 (citations and footnotes omitted).]

The channeling of that discretion was premised upon the new sentencing philosophy of the Code, which was offense-oriented and did not focus on the rehabilitation of offenders.

Had the Legislature not intended such a change there would have been little need for the crafting and grading of offenses in the Code. Skeptics saw this process as the principal obstacle to making the punishment fit the crime, describing as "heroic reform" the creation of a system that must "define offenses with a morally persuasive precision that present laws do not possess." Zimring, *Making the Punishment Fit the Crime: A Consumer's Guide to Sentencing Reform,* in Sentencing 327, 330–31 (H. Gross and A. von Hirsch eds. 1981). Yet that is precisely what the Legislature did in fashioning the Code:

Crimes would be defined with precision and specific offenses would carry specified sentences, along with lists of aggravating and mitigating circumstances that could modify the penalty. [Zimring, *supra,* at 330.]

A few examples will suffice. There are four degrees of arson. Any person who accepts money or other consideration to set a fire is guilty of arson in the first degree. *N.J.S.A.* 2C:17–1(d). It is a second degree crime to set a fire purposefully endangering another person, in order to destroy a building or to collect insurance proceeds. *N.J.S.A.* 2C:17–1(a). A person who sets fire to a dwelling and recklessly endangers a person or building has committed arson in the third degree. *N.J.S.A.* 2C:17–1(b). And fourth degree arson occurs when an individual fails to report or control a fire, if he is under a duty to report such a fire or the fire is started under his control or with his assent. *N.J.S.A.* 2C:17–1(c).

Other offenses are similarly broken down and graded. There are three degrees of theft, *N.J.S.A.* 2C:20–2(b), *see State v. Talley,* 94 *N.J.* 385 (1983); two degrees of robbery, *N.J.S.A.*

2C:15–1, see *State v. Mirault*, 92 *N.J.* 492 (1983); and four degrees of criminal sexual conduct. *N.J.S.A.* 2C:14–2, 2C:14–3.

That task of grading was difficult. Having been done, its premise—the fundamental sentencing guideline that the punishment fit the crime, not the criminal—must be respected.

That the Legislature intended to alter the traditional weighing of aggravating and mitigating factors in making the "in or out" decision is further seen in its choice of the standard of proof that the court be "clearly convinced" that aggravating or mitigating factors "substantially outweigh" the other in choosing either to downgrade a sentence or add a period of parole ineligibility. *N.J.S.A.* 2C:44–1(f)(2) and 2C:43–6(b).

As difficult as it is to embody principles of decision in words, *State v. Roth*, 95 *N.J.* at 362–63, the stakes are critical: "[A] standard of proof represents an attempt to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions * * *." *In re Winship*, 397 *U.S.* 358, 370, 90 *S.Ct.* 1068, 1076, 25 *L.Ed.2d* 368, 379 (1970) (Harlan, J., concurring). Our courts have defined "clear and convincing evidence" as

> that which "produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established," evidence "so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." [*In re Boardwalk Regency Casino License Application*, 180 *N.J.Super.* 324, 339 (App.Div.1981), mod., 90 *N.J.* 361 (1982) (quoting *Aiello v. Knoll Golf Club*, 64 *N.J.Super.* 156, 162 (App.Div.1960)).]

Since confidence in this decision to downgrade or add parole ineligibility requires this higher standard, the Code must have contemplated an even higher standard to give confidence to the "in or out" decision.

We held in *State v. Roth*, 95 *N.J.* at 363, that a reviewing court must satisfy itself that the sentencing court applied the standards and guidelines of the Code. The sentencing transcripts do not disclose an inexorable focus on the gravity of the offense; rather, the court concentrated in good measure upon the defendant. Sentencing hearings were twice adjourned due

to insufficient information. At each hearing the court requested additional information, including doctors' reports and interviews with the victim, the defendant's natural daughter, and the neighbors. The trial court understandably realized that the defendant was "looking [at] a lot of time" and said, "I want to make very sure of what I'm doing before I do it."

██ We do not mean to imply that courts should not take such factors into account in the sentencing process. In fact, such aggravating and mitigating factors are included in the Code and should bear on the range of sentence passed, *N.J.S.A.* 2C:44–1(a) and (b), and the decision to downgrade or impose parole ineligibility. *N.J.S.A.* 2C:44–1(f)(2); 2C:43–6(b). But the sentence imposed must reflect the Legislature's intention to focus on the degree of the crime itself as opposed to other factors personal to the defendant.

Crime within the family is one of the most deeply troubling aspects of contemporary life. Governor Kean recently established a task force to study the problem of child abuse. Exec. Order No. 51 (Nov. 17, 1983). The United States Attorney General has instituted a Task Force on Family Violence to study the national dimensions of this problem. *See* 113 *N.J.L.J.* 20 (1984). The Legislature has therefore graded sexual crimes that occur within the family differently from those occurring in other contexts. When criminal sexual conduct involves a victim who is "at least 13 but less than 16 years old," and the "actor is a foster parent, a guardian, or stands in loco parentis within the household," *N.J.S.A.* 2C:14–2(a)(2)(c), even though there may have been no force, the silent abuse inflicted deeply threatens the fabric of society. Accordingly, the Legislature graded this crime as one of the first degree. *N.J.S.A.* 2C:14–2(a).

██ The sentence for such a crime must reflect primarily the severity of that crime. We find that focus missing. Specifically, when the trial court imposed sentence, although it found no excuse for the conduct, its recital of the aggravating and mitigating factors reflected that

> By the same token [the victim] is out of the house, she is now married and is leading essentially her own life and I must think not only of the past but of the future.
>
> In your favor you have no prior record, you are steadily and regularly employed. You have other family people depending on you. I think the possibility of this happening again is not very strong. So, those are the mitigating and aggravating circumstances.

In *Roth*, 95 *N.J.* at 368, we emphasized that these factors are not each to be accorded an equivalent value. That a 13-year-old girl left her home to start a new life is hardly a mitigating factor, and is of limited if any weight in comparison to the degree of the crime. Indeed, it could be viewed as an aggravating factor, a tragic sequel to the crimes committed upon her. Generally, the trial court's statements during the three sentencing hearings reflect the pre-Code philosophy of sentencing: "[Sentencing] is a difficult weighing and measuring of what has gone on and what has to happen in the future"; "I'm here to sentence, based upon a combination of factors, which include punishment, [deterrence], rehabilitation, all in the context of a meaningful sentence that will accomplish something and should neither be too lenient nor should I be too harsh * * *."; "While I have in other cases sentenced to substantial periods of imprisonment, each case stands on its own factors." This concept of a broad sentencing discretion is made evident by contrasting the court's statements to the defendant—"You've committed a crime for which I could have put you in jail for 20 years" and "originally I intended to put you in jail for 10 years"—with the actual sentence imposed of 63 days in jail and 5 years' probation. These statements reflect the wide range of discretion freely available in most cases prior to 1979, not the narrowed discretion permitted by the Code.

We conclude that the trial court relied on pre-Code sentencing guidelines. This approach balanced the defendant's capacity for rehabilitation with the other purposes of punishment, rather than following the offense-oriented analysis of the Code. The trial court tended to view the crime itself as only one factor among many to consider at sentencing, whereas the

severity of the crime is now the single most important factor in the sentencing process. It was a mode of sentencing that had been repeatedly approved in *State v. Whitaker*, 79 *N.J.* 503 (1979), *State v. Leggeadrini*, 75 *N.J.* 150 (1977), and *State v. Ivan*, 33 *N.J.* 197 (1960), and one that the Appellate Division felt constrained to affirm under the *Whitaker* standard.

Because the Code has displaced that standard, we need not decide whether the sentence imposed reflected a proper balance under the old standard of the need to deter crimes of this gravity. We realize there is no calculus that will guide the pen to the perfect sentence. Indeed, these few years following adoption of the Code have been a period of adjustment and transition, resulting at times in a confusion of philosophies. In various places, the Code itself gives conflicting signals about the philosophical justification for punishment, *see N.J.S.A.* 2C:1–2(b), and the language of the Code does not point unflinchingly in one direction. *See* Greenberg, "Highlights of the New Code of Criminal Justice," 104 *N.J.L.J.* 345 (1979). Front line judges need not be faulted for their judgments in these circumstances.

Because of the view that we take of the offense-oriented sentencing standards of the Code as it stood even before passage of the 1981 amendments, we believe that the sentence imposed must be set aside. The Code is a restraint upon the discretion of judges in individual cases. But there can be no justice without a predictable degree of uniformity in sentencing. We must not forget that the driving force behind sentence reform was the tragic disparity in sentences inflicted upon defendants under the old model. *See* M. Frankel, Criminal Sentences: Law Without Order 3–25 (1973); C. Silberman, Criminal Violence, Criminal Justice 385–401 (1978); Struggle for Justice 125–44 (American Friends Service Committee 1971). The loss of unfettered discretion may be the price of evenhanded justice.

By structuring discretion, our Legislature has reposed the deepest trust in the judiciary. It has for the most part rejected determinate or flat-time sentencing. It has sought to achieve

the optimum balance between the scheme of laws and the flexibility of discretion. *See* K. Davis, Discretionary Justice 19 (1969). A judge who inflexibly sentences at the top of the range does the same injustice as one who tends to the opposite extreme. No system will be perfect, but the new Code holds the promise of reform. We can look forward to a principled, even-handed, effective and fair law of sentencing.

Because the standards of the Code were not applied, the sentence must be set aside. The judgment of the Appellate Division is reversed and the cause remanded for further proceedings in accordance with this opinion.

*For reversal and remandment*—Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARI-BALDI—6.

*For affirmance*—None.