BLD-315                                                          **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-2705
_____

RONALD C. JONES,
                                              Appellant
v.

M. BROWN, Internal Affairs OFC.; STEVEN SOOTKOOS,
Associate Warden; ROY L. HENDRICKS, Warden

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 02-cv-03045)
District Judge:  Honorable Garrett E. Brown, Jr.

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6

September 17, 2009
Before: MCKEE, Chief Judge, FISHER and CHAGARES, Circuit Judges

(Opinion filed: May 2, 2011)

_____

OPINION

_____

PER CURIAM

        In September of 2002, appellant Ronald Jones and others incarcerated at Northern

State Prison filed a complaint pursuant to 42 U.S.C. § 1983 in United States District

Court for the District of New Jersey, alleging that their First Amendment right to free speech was being violated by a recent revision to the Department of Corrections policies concerning incoming prisoner mail. Prior to the revision, the regulations prohibited officers from opening a prisoner's legal mail outside of his presence. Following the infamous anthrax scare involving the United States Post Office building in Hamilton, New Jersey, the new policy, enacted on October 19, 2001, permitted DOC officers to open a prisoner's legal mail outside of his presence. Jones made further claims of retaliation by prison officials, including that an NSP guard verbally threatened him in retaliation for filing grievance forms and that an internal affairs officer ordered prison guards to search his cell and confiscate his typewriter and hundreds of legal documents. Jones sought injunctive and declaratory relief, as well as compensatory and punitive damages.

The District Court denied relief and Jones appealed. On September 15, 2006, we affirmed the judgment of the District Court except that we reversed the grant of summary judgment on Jones's claim for injunctive relief; as to that, we remanded with instructions to enter the desired injunction. See Jones v. Brown, 461 F.3d 353, 365 (3d Cir. 2006) (anthrax-related legal mail policy of state prison was not reasonably related to prison's legitimate penological interest in protecting health and safety of prisoners and staff). On September 20, 2007, the District Court issued an order that the defendants "immediately cease and desist the practice of opening Plaintiffs' legal mail outside of their presence."

2

At issue in the instant appeal, on December 3, 2008, Jones filed a motion for enforcement of the injunction, complaining that the defendants were not complying with it. He claimed that, in September and October 2007, prison officials distributed legal mail in the "Traffic Control" area of NSP. There was a 4 x 8 inch hole in one of the walls of the room where the legal mail was opened through which prisoners were expected to look while their mail was being opened. Jones asserted that he was unable to see his legal mail being opened through that hole, and he informed corrections officers of this fact both verbally and through the submission of a grievance form.

In early 2008, Jones received a response from prison officials that the matter would be investigated. Then, on or about January 30, 2008, Jones noticed that a 1 x 2 foot window had been cut into one of the walls of the "Traffic Control" area mail room. Prisoners could now witness the opening of their legal mail through this window. Jones was satisfied by this arrangement, in theory. The window, however, was often covered in black plastic. Only twice, in February of 2008, did corrections officers remove the black plastic from the window while they were opening Jones's legal mail. Jones reminded the officers to remove the black plastic before opening his mail and they refused. He reported this problem to prison officials but did not receive a response. He then turned to the District Court, seeking enforcement of the injunction and the imposition of $10,000 in sanctions.

In response to Jones's motion for enforcement, the defendants submitted the

Declaration of Lieutenant William Anderson (and later submitted his supplemental affidavit). Anderson conceded that the windows were generally kept covered with black plastic to prevent prisoners from looking through them at times when their legal mail was not being opened. However, he denied that the allegation that the black plastic remained in place when prisoners were trying to view the opening of their legal mail. Anderson also asserted that Jones's claims were moot in any event because legal mail was no longer opened in the "Traffic Control" area as of November of 2008. Instead, corrections officials at that time began opening legal mail in a room in the NSP Social Services Department, and prisoners actually were brought into the room to observe the procedures. Later, in December of 2008, the location was moved to a room in the NSP Visiting Area, but, again, prisoners were allowed to be present in the room when their legal mail was being opened. In light of these facts, the defendants contended that they had complied with the District Court's injunction.

In a reply, which Jones supported with affidavits from fellow prisoners, he conceded that his legal mail was now being opened in his presence. However, he contended that the defendants had been in violation of the injunction for a significant period of time and should be held in contempt for doing so. Moreover, he accused Lieutenant Anderson of submitting a perjured affidavit.

During the course of these proceedings, Jones also claimed that corrections officers had retaliated against him for seeking enforcement of the injunction. He also

4

asserted that he had been wrongfully denied parole in July of 2008. With respect to these claims, Jones sought a declaratory judgment enjoining NSP officials from harassing him or retaliating against him in any way and costs.

In an Order entered on May 26, 2009, the District Court reopened the case, and construed Jones's motion as one for civil contempt. The court then denied it as such. The court severed Jones's claims of retaliation and denial of parole, without prejudice, because they were new and not part of the original action, and instructed the Clerk of the District Court to open two new civil actions with respect to these claims. The two new civil actions were to be closed administratively until such time as Jones arranged to pay the filing fees associated with the new cases, or otherwise give indication that he did not wish to pursue them.

Jones appeals. Our Clerk granted him leave to appeal in forma pauperis and advised him that his appeal was subject to summary dismissal under 28 U.S.C. § 1915(e)(2)(B) or summary affirmance under Third Cir. LAR 27.4 and I.O.P. 10.6. He was invited to submit argument in writing, and he has done so. In his response, Jones contends that the District Court decided the case prematurely and should have allowed greater discovery.

We will summarily affirm under Third Circuit LAR 27.4 and I.O.P. 10.6, because it clearly appears that no substantial question is presented by this appeal. We have jurisdiction under 28 U.S.C. § 1291. In treating Jones's motion as one for civil contempt,

5

the District Court reasoned that Jones would have to show that (1) a valid court order existed, (2) the defendants had knowledge of the order, and (3) they disobeyed it. See Harris v. City of Philadelphia, 47 F.3d 1311, 1329 (3d Cir. 1995). A valid order existed here, and the validity of it could not be questioned. See id. Furthermore, the defendants had knowledge of the order. Nevertheless, the District Court reasoned, the elements of civil contempt must be proved by clear and convincing, and any ambiguities are resolved in favor of the party charged with contempt. See John T. ex rel. Paul T. v. Delaware County Intermediate Unit, 318 F.3d 545, 552 (3d Cir. 2003). In addition, the defendants may not be held in contempt if they took all reasonable steps to comply with the injunction. Harris, 47 F.3d at 1324.

Applying the applicable law, the District Court concluded that Jones had not shown by clear and convincing evidence that the defendants were not in compliance with the court's order requiring them to cease and desist the practice of opening Jones's legal mail outside of his presence. Jones conceded that, by late December of 2008, his legal mail was being opened in his presence, and his evidence that the order was disobeyed prior to that time was not "clear and convincing."

We review the District Court's order denying Jones's motion for enforcement of the court's order for abuse of discretion because no legal issue is involved. Harris, 47 F.3d at 1321. Evidence is "clear and convincing" when it "produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be

6

established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." Matter of Jobes, 529 A.2d 434, 407-08 (N.J. 1987) (quoting State v. Hodge, 471 A.2d 389, 393 (N.J. 1984) (internal quotations removed)). This is a stringent standard and the burden of proof thus was squarely on Jones.

We have reviewed the record evidence, and Jones's argument in support of his appeal.[1] But, even assuming, as did the District Court, that Jones's and his inmate-witnesses' assertions of imperfect compliance with the court's order had some basis in fact, we cannot agree with him that the District Court necessarily abused its discretion in finding that these assertions did not constitute clear and convincing evidence of noncompliance. The District Court did not abuse its discretion in determining that it could not come to a clear conviction, see Jobes, 529 A.2d at 407-08, that the defendants did not take all reasonable steps, see Harris, 47 F.3d at 1324, to comply with the injunction. When Jones complained about the 4 x 8 inch hole, the defendants looked into it and ultimately created a sizeable window for viewing, which Jones conceded was adequate. The *extent* of NSP's subsequent use of black plastic on the viewing window certainly was disputed by the parties, but Jones offered no evidence to support his

---

[1] Although we likely would lack jurisdiction to review the District Court's denial of Jones's new retaliation and parole claims without prejudice, see Borelli v. City of Reading, 532 F.2d 950, 951-52 (3d Cir. 1976) (order dismissing complaint without prejudice generally not appealable), Jones does not appear to challenge this part of the court's order.

7

assertion that Anderson lied in his Declaration. Moreover, the issue of the black plastic became moot when corrections officials began opening legal mail in a room in the Social Services Department, with the prisoners present. Jones has complained that forty days elapsed after his motion for enforcement was filed before the matter of satisfactory compliance with the District Court's order was resolved, but the District Court, without abusing its discretion, was free to conclude that the several steps taken along the way, and the amount of time in which they were taken, ultimately was reasonable and indicated compliance with the court's order.

With respect to Jones's contention that discovery was incomplete and the District Court's decision premature, we note that a district court has discretion to control the scope of discovery. See Petrucelli v. Bohringer and Ratzinger, 46 F.3d 1298, 1310-11 (3d Cir. 1995). In view of the affidavits that were submitted, and the absence of any support from Jones for his assertion that Anderson's affidavit was unworthy of belief, the District Court did not abuse its discretion in determining that Jones's motion for enforcement could be resolved without resort to sections of the logbooks indicating where and when legal mail was opened in the facility.

We will summarily affirm the order of the District Court denying the motion for enforcement and sanctions.