# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1393-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KEVIN FIELDS, a/k/a
JERMAINE BATEMAN,
KEVIN CLARKE, KEVIN
BUTLER, KEVIN FEILDS,
and KEVIN TAYLOR

     Defendant-Appellant.

_____

Submitted October 4, 2021 – Decided October 29, 2021

Before Judges Rose and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 17-03-0776, 17-07-1853 and 17-08-2087.

Joseph E. Krakora, Public Defender, attorney for appellant (Abby P. Schwartz, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Matthew E.

Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Kevin Fields appeals from a September 30, 2019 order denying his petition for post-conviction relief (PCR) based on his claim of ineffective assistance of counsel. We affirm.

Between March and August of 2017, defendant was charged with nine offenses under three separate indictments. First, he was indicted in March 2017 for: second-degree aggravated assault, N.J.S.A. 2C:12-1(b); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a), following a shooting in a Newark apartment. Next, due to his involvement in a shooting inside a Newark liquor store, he was indicted in July 2017 for: second-degree burglary, N.J.S.A. 2C:18-2; two counts of second-degree aggravated assault, N.J.S.A. 2C:12-1(b); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). Finally, he was indicted in August 2017 for third-degree terroristic threats, N.J.S.A. 2C:12-3(b), after threatening his girlfriend with bodily harm.

A-1393-19

In November 2017, defendant's court-appointed counsel and the Essex County assistant prosecutor met for a status conference. The judge adjourned the conference so defense counsel could review a surveillance video of the May 2017 liquor store incident. The prosecutor provided defense counsel with the video "sometime in the fall of 2017," but initially, defense counsel was unable to view it due to technical issues. He eventually watched the video in February 2018 and noted the footage did not support defendant's claim that he acted in self-defense during the liquor store incident.

Defense counsel and the prosecutor met for a plea conference on February 13, 2018. At that time, defendant had begun serving an eighteen-month sentence for an unrelated matter. Defense counsel rejected the State's initial eight-year prison term offer, and negotiated a favorable plea agreement whereby defendant agreed to plead guilty to two counts of second-degree aggravated assault and two counts of second-degree possession of a handgun under separate indictments. He also agreed to plead guilty to the third-degree terroristic threats charge under the third indictment. In exchange for defendant's guilty pleas, the State recommended that he serve: five-year prison terms for both counts of second-degree aggravated assault, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2; five-year terms for both counts of second-degree unlawful

possession of a weapon, subject to the Graves Act, N.J.S.A. 2C:43-6(c); and a three-year term for the terroristic threats offense. Additionally, the State recommended that all sentences would run concurrently with each other and with the sentence defendant was currently serving so defendant's aggregate sentence would not exceed five years, and it recommended dismissal of the remaining charges.

At sentencing on March 26, 2018, defense counsel requested a downward departure on the second-degree charges so defendant would be sentenced in the third-degree range, pursuant to N.J.S.A. 2C:44-1(b). Counsel primarily relied on mitigating factor nine, N.J.S.A. 2C:44-1(b)(9) (the character and attitude of the defendant indicate that he is unlikely to commit another offense). The State objected to the downward departure and argued in favor of aggravating factors three (risk of reoffending), six (criminal history), and nine (deterrence), N.J.S.A. 2C:44-1(a)(3), (6), and (9).

The judge found aggravating factors three, six, and nine applied, and that defendant's guilty pleas in this matter resulted in his seventeenth, eighteenth and nineteenth indictable convictions. She also found mitigating factor nine, but concluded it was outweighed by the aggravating factors. Accordingly, she

denied defendant's request for a downward departure and sentenced defendant consistent with the plea agreement.

In December 2018, defendant filed a PCR petition, claiming his plea counsel was ineffective by failing to "properly articulate [an] aggravating and mitigating factor analysis" in favor of a downward departure at sentencing. PCR counsel also argued that the delay in resolving defendant's indictments "violated his right to a speedy trial." The same judge who sentenced defendant conducted argument on defendant's application on September 23, 2019. She stated she had "an independent recollection of the chronology of this matter and of the negotiated plea agreement that yielded the defendant's sentence." Additionally, the judge found "the sentence received by [defendant] was required by statute. The two statutes that were implicated in the sentencing scheme were [NERA] and the Graves Act." Further, the judge rejected defendant's speedy trial argument, finding that although the delay

> occasioned between the . . . defendant's arrest and . . . ultimate disposition is lengthy, . . . at no time did [defendant] protest the delay, did encourage the delay[,] and the ultimate resolution is a resolution that contemplated three indictments that may not have been available at an earlier period of time.
>
> On each matter . . . [defendant] was presented before the court. [Defendant] neither orally nor in any

A-1393-19

independent writing ever decried the length of time occasioned by the delay.

The court notes that [defendant] is not a novice . . . in the criminal justice system and the court would find, one[,] he was represented by counsel[;] two[,] he was quite aware that – in this instance . . . justice delayed may in effect yield a better outcome.

Accordingly, the judge denied defendant's PCR petition without an evidentiary hearing.

On appeal, defendant raises the following arguments:

POINT I

COUNSEL FOR DEFENDANT WAS INEFFECTIVE AS HE FAILED TO WATCH THE VIDEO CAUSING A DENIAL OF DEFENDANT'S RIGHT TO A SPEEDY TRIAL AND BY FAILING TO WEIGH THE AGGRAVATING AND MITIGATING FACTORS AT SENTENCING, FAILED TO HAVE THE COURT SENTENCE DEFENDANT TO AN OFFENSE ONE DEGREE LOWER THAN THAT FOR WHICH HE WAS SENTENCED. THIS DENIED DEFENDANT DUE PROCESS AND A FAIR TRIAL. (Partially raised below).

A. Ineffective Assistance of Counsel.

B. Counsel Was Ineffective For Failing To Move This Case In A Quicker Fashion And, As Such, Violated Defendant's Right To A Speedy Trial.

C. Counsel Was Ineffective For Failing To Structure An Argument In Support Of Sentencing Defendant To Third-Degree Offenses For The Assaults.

6

We are not convinced.

Generally, we will not disturb a PCR court's factual findings if they are "supported by adequate, substantial and credible evidence." State v. Harris, 181 N.J. 391, 415 (2004) (quoting Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)). However, when a PCR petition is denied without an evidentiary hearing, as was the case here, we "may review the factual inferences the [PCR] court has drawn from the documentary record de novo." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016). We also review a PCR court's legal conclusions de novo. Ibid.

Criminal defendants are guaranteed the right to effective legal assistance from counsel. U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10. A claim for ineffective assistance of counsel must satisfy the two-part test pronounced in Strickland v. Washington, 466 U.S. 668, 684-87 (1984); see also State v. Fritz, 105 N.J. 42, 49-53 (1987). First, the defendant must show that counsel's performance was deficient (the deficiency prong). State v. Gideon, 244 N.J. 538, 550 (2021). Second, the defendant must prove that he or she suffered prejudice as a result of counsel's deficient performance (the prejudice prong). Ibid. The burden of proving both prong falls "squarely on the defendant." State v. Paige, 256 N.J. Super. 362 (App. Div. 1992).

A-1393-19

The deficiency prong requires a showing that counsel "made errors so serious that [he or she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. To be deemed deficient, counsel's representation must fall below the standard of "reasonableness under prevailing professional norms." Id. at 688. We must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[,]" and "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. Counsel's performance is not deficient "[m]erely because a trial strategy fails[,]" State v. Bey, 161 N.J. 233, 251 (1999), or because he or she failed "to raise unsuccessful legal arguments[,]" State v. Worlock, 117 N.J. 596, 625 (1990).

Even if counsel's performance was deficient, a defendant must also prove prejudice resulted from the deficiency. The prejudice prong has been described as the "far more difficult" hurdle to overcome, State v. Preciose, 129 N.J. 451, 463 (1992), an "'exacting standard[,]'" Gideon, 244 N.J. at 561 (quoting State v. Allegro, 132 N.J. 352, 267 (2008)), and where "most PCR petitions . . . are likely to fail," State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011). To prove prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." Strickland, 466 U.S. at 687. Because of the uncertainty associated with trial, "it is often quite difficult for petitioners who have acknowledged their guilt to satisfy Strickland's prejudice prong." Padilla v. Kentucky, 559 U.S. 356, 371 n. 12 (2010). Therefore, where a defendant seeks to set aside a conviction based on a guilty plea, he or she must also "'convince the court that a decision to reject the plea bargain'" and proceed to trial "'would have been rational under the circumstances.'" Maldon, 422 N.J. Super. at 486 (quoting Padilla, 559 U.S. at 372); see also State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009). Such a determination must be "based on evidence, not speculation." Ibid.

Here, defendant argues plea counsel was ineffective because when he presented an aggravating and mitigating factor analysis at sentencing, counsel failed to emphasize that a downward departure was appropriate under the "interest of justice" prong of N.J.S.A. 2C:44-1(f)(2). We disagree.

N.J.S.A. 2C:44-1(f)(2) provides that a court may sentence a defendant who has been convicted of a first- or second-degree crime to a term appropriate to an offense one degree lower if: (1) it is "clearly convinced that the mitigating factors substantially outweigh the aggravating factors"; and (2) "the interest of justice [so] demands." A defendant must satisfy both statutory prongs to justify a downward departure. State v. Megargel, 143 N.J. 484, 496 (1996).

9

"'[A] criminal sentence is always and solely committed to the discretion of the trial court to be exercised within the standards prescribed by the Code of Criminal Justice.'" State v. Hess, 207 N.J. 123, 151 (2011) (quoting State v. Warren, 115 N.J. 433, 447 (1989)). Plea counsel has a duty to present relevant mitigating factors and supporting evidence at sentencing. See id. at 154. However, it is the "trial courts' independent responsibility to identify and weigh the aggravating and mitigating factors in fixing a just sentence." Id. at 151.

"[T]he standard governing the downgrading of a defendant's sentence . . . is high." Megargel, 143 N.J. at 500. Further, it is "paramount that the sentence reflect the Legislature's intention that the severity of the crime now be the most single important factor in the sentencing process." Ibid. (citing State v. Hodge, 95 N.J. 376, 379 (1984)). The basis for this principle is the need to "assure the protection of the public and the deterrence of others. The higher the degree of the crime, the greater the public need for protection and the more need for deterrence." Ibid.

"Although the degree of the crime is the focus of the sentence, facts personal to the defendant may be considered in the sentencing process," such as "a defendant's role in the incident." Id. at 501. The judge also must assess

"whether there is a compelling reason to downgrade defendant's sentence in the interest of justice" separate from any mitigating factors. Id. at 501-02.

Governed by these standards, we are satisfied plea counsel was not ineffective, despite that he was unable to obtain a downward departure. In fact, it is well settled that the mere fact defense counsel's strategy is unsuccessful is not sufficient to support a Strickland claim. See Bey, 161 N.J. at 251.

Here, the record reflects that plea counsel made substantive arguments at sentencing for a downward departure based on mitigating factor nine. He encouraged the judge to "take a broader view of [defendant]" and see that "there is a capacity for him to both change and move forward with his life." Counsel further argued that defendant: is charitable in his community "by supporting church groups as well as toys for children and helping the homeless"; (2) "has taken responsibility for each of the allegations that he plead to"; (3) is a high school graduate; (4) was a "pleasure to deal with in many ways because of his maturity as well as his attitude"; and (5) "was the victim of a crime himself, having been shot in the leg approximately two and a half years prior at the same location as one of the incidents."

Defense counsel also arranged for defendant's girlfriend (the victim of defendant's terroristic threats) to testify at sentencing. She stated defendant had

11

performed charitable acts in support of the community, including hosting back-to-school events and providing food for the homeless. She also testified that although defendant had made mistakes, the judge should "take into consideration that he is a good person" with a "very good heart." When questioned about the offense which led to her victimization, defendant's girlfriend stated she intended for the grand jury to dismiss the indictment for terroristic threats because "it was just a miscommunication" and "nothing happened." Defense counsel also provided the judge with "many letters" from defendant's family, friends, and members of the community in support of his request for a downward departure. Under these circumstances, we cannot conclude plea counsel's performance fell short of the prevailing professional norms, as required by Strickland. 466 U.S. at 688.

Even if defendant could establish that plea counsel's performance was deficient, he fails to satisfy the prejudice prong of Strickland. As the prosecutor noted at sentencing, defendant's most recent convictions "represent[ed] his [seventeenth, eighteenth] and [nineteenth] indictable convictions." Thus, the prosecutor argued aggravating factors three, six, and nine weighed against a downward departure. Further, the prosecutor emphasized that several of defendant's prior convictions involved "violent offenses like aggravated assault,

12

unlawful possession of a handgun by a certain persons not to possess a handgun, conspiracy, [and] resisting arrest." The prosecutor also described defendant's plea bargain as a "sweetheart deal" and stated defendant "got three for the price of one" because of the concurrent sentencing contemplated under the plea deal.

The judge agreed with the State's position at sentencing, finding "the aggravating factors outweigh[ed] the mitigating factors" and there was "no basis for downward departure from the sentence recommended." She noted defendant's criminal history, "does stretch back quite some time" to 1990 and that his convictions included "weapons offenses." Accordingly, we are satisfied defendant has not demonstrated there is a reasonable probability that if plea counsel employed a different strategy, the outcome of sentencing would have been different. See Strickland, 466 U.S. at 687.

We also are not convinced defendant's speedy trial argument, as it relates to plea counsel's performance, should trigger appellate relief. As a preliminary matter, for the first time on appeal, defendant contends counsel was ineffective for failing to promptly review the surveillance video of the liquor store incident. We generally refuse to consider issues not presented to the trial court, State v. Alexander, 233 N.J. 132, 148 (2018), but we address defendant's claim here for purposes of complete review.

A-1393-19

Criminal defendants have a right to a speedy trial. U.S. Const. amend. VI (incorporated against the states by U.S. Const. amend. XIV). The trial court balances four factors to determine if that right has been violated, namely: (1) length of the delay; (2) reason for the delay; (3) whether defendant asserted his right to a speedy trial; and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530-31 (1972). "[N]one of the four factors . . . [is] either a necessary or sufficient condition to . . . finding . . . a deprivation of the right of speedy trial." Id. at 533. As such, we have "decline[d] to adopt a rigid bright-line try-or-dismiss rule" because the "facts of an individual case are the best indicators of whether a right to a speedy trial has been violated." State v. Cahill, 213 N.J. 253, 270-71 (2013).

Regarding the first Barker factor, whether the delay was reasonable often depends on the nature of the charges. See Barker, 407 U.S. at 531 (noting, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge"). A delay of more than one year will presumptively trigger an analysis of all four Barker factors. Cahill, 213 N.J. at 266. A court will also consider "the amount of time customarily required to dispose of similar charges," and the defendant has the burden of establishing such customs. Id. at 265 (citing Doggett v. United States, 505 U.S. 647, 651-52

14

(1992)). Still, courts refuse to decide "[h]ow long is too long . . . 'by sole reference to the lapse of a specified amount of time.'" State v. Detrick, 192 N.J. Super. 424, 426 (App. Div. 1983) (quoting State v. Smith, 131 N.J. Super. 354, 360 (App. Div. 1974)).

As to the first Barker factor, defendant argues that by the time he entered his guilty pleas, he had been detained in the county jail for 177 days. He contends this was an unreasonable length of time to resolve his cases and violative of his right to a speedy trial. We do not agree.

It is not uncommon for courts to tolerate a delay of more than one year before a case is tried. See State v. Gaikwad, 349 N.J. Super. 62, 88 (App. Div. 2002) (seventeen-month delay in bringing a defendant to trial for computer theft charges). It bears emphasis that longer delays may "be tolerated for serious offenses or complex prosecutions." Cahill, 213 N.J. at 266. Of course, purposeful delay tactics weigh heavily against the State. Barker, 407 U.S. at 531. Here, defendant faced nine charges under three indictments, which charges included aggravated assault and weapons offenses, and involved different victims. He was first indicted in March 2017, and resolution of his charges occurred less than a year later, in February 2018, when he entered his guilty pleas. Thus, the first Barker factor weighs against defendant.

Regarding the second <u>Barker</u> factor, the court must consider the reasons for the delay. <u>Cahill</u>, 213 N.J. at 266. Here, it is uncontroverted that after defendant was indicted in March 2017, he was rearrested and indicted on two additional cases. Moreover, as defendant admits, technical difficulties delayed plea counsel's viewing of the surveillance video of the liquor store incident. But plea counsel subsequently arranged with the State to watch the video, and he engaged in negotiations with the State to globally resolve defendant's multiple charges. Notably, while defendant awaited resolution of the instant offenses, he also was serving an existing sentence. Thus, we are not satisfied the second <u>Barker</u> factor weighs in defendant's favor.

Turning to the third <u>Barker</u> factor, a defendant is not required to assert the right to a speedy trial during pre-trial proceedings. <u>Cahill</u>, 213 N.J. at 266. However, a defendant's prior claim of unreasonable delay will be given "strong evidentiary weight." <u>Barker</u>, 407 U.S. at 531-32. Conversely, the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial," since a defendant is more likely to complain if there is a serious deprivation of his or her rights. <u>Ibid.</u>

Here, as the PCR judge noted, defendant "neither orally nor in any independent writing ever decried the length of time occasioned by the delay" in

A-1393-19

resolving his case. She also found defendant was "quite aware . . . that justice delayed may[,] in effect[,] yield a better outcome." Thus, the third <u>Barker</u> factor also weighs against defendant.

Finally, regarding the fourth <u>Barker</u> factor, courts have identified three types of prejudice to consider, namely: "oppressive pretrial incarceration, anxiety and concern of the accused[,] and impairment of the defense." <u>State v. Szima</u>, 70 N.J. 196, 201 (1976). Here, we cannot conclude any delay in this matter caused defendant to suffer prejudice, particularly given the PCR judge's finding that "the ultimate resolution is a resolution that contemplated three indictments that may not have been available at an earlier period of time." Also, defendant fails to show he suffered "oppressive pretrial incarceration" because he was already incarcerated for an unrelated crime during plea negotiations. Further, while defendant may have suffered from anxiety and concern while awaiting trial on three indictments, his extensive criminal history, as well as his incarceration on an unrelated matter made him less vulnerable to such prejudice.

Finally, defendant fails to show that any delay in resolving defendant's three indictments impaired his defense. For example, defendant has advanced no evidence to demonstrate plea counsel's delay in viewing the surveillance video impaired his defense, because the video only related to one of defendant's

17

three indictments, and admittedly, it "did not support a [theory of self-]defense" for charges arising from the liquor store incident. Also, once plea counsel watched the video and was satisfied it did not establish a self-defense theory, he was able to negotiate a global plea offer which contemplated concurrent sentences on five charges, with those sentences to run concurrent to defendant's existing sentence. Accordingly, none of the Barker factors support defendant's speedy trial argument.

In sum, defendant has not demonstrated a violation of his speedy trial rights under the test in Barker, and has failed to establish ineffective assistance of counsel under Strickland.

To the extent we have not addressed defendant's remaining arguments, we are satisfied they lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION