**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4310-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOSEPH A. FERRETTI,

     Defendant-Appellant.

_____

Argued December 16, 2019 – Decided April 30, 2020

Before Judges Rothstadt, Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 16-05-0577.

Brian J. Neary argued the cause for appellant (Law Offices of Brian J. Neary, attorneys; Brian J. Neary, of counsel; Jane M. Personette, on the brief).

Ian C. Kennedy, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Prosecutor, attorney; Ian C. Kennedy, of counsel and on the brief; John J. Scaliti, Legal Assistant, on the brief).

PER CURIAM

Defendant Joseph Ferretti appeals from his conviction by jury for second-degree vehicular homicide, N.J.S.A. 2C:11-5 (count one),[1] and his five-year prison sentence, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant and codefendant Joseph Meyer were driving two Ferraris to a function at the Meadowlands Sports Complex when defendant's red Ferrari crossed the double-yellow line on Berrys Creek Road and collided with a motorcycle, causing the motorcyclist massive injuries that resulted in his death. The State contended both defendants were traveling at a high rate of speed before the collision with the motorcycle.

Meyer accepted the State's offer to plead guilty to second-degree vehicular homicide,[2] N.J.S.A. 2C:11-5, and provide truthful testimony if called as a witness in defendant's trial, in exchange for the State's recommendation that he be sentenced in the third-degree to a five-year probationary sentence conditioned on 364 days in the county jail. Defendant opted to go to trial. The

---

[1] The trial court granted defendant's motion for judgment of acquittal at the conclusion of the State's case and dismissed the other indicted charge, first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a) (count two). R. 3:18-1.

[2] The other indicted charge, first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a) (count two), was dismissed pursuant to Meyer's plea agreement.

A-4310-17T1

defense theory, as set forth in his merits brief, was that neither defendant nor Meyer was racing or

> driving at "race speed." Rather, immediately preceding the collision which occurred within a couple hundred yards of his destination [at which the Ferraris were to be delivered, defendant] was safely driving on a relatively deserted, four-lane road, which had been recently paved and for which no speed limit was posted. . . . Meyer's loss of control of his own vehicle caused him to enter [defendant's] lane of travel, thereby forcing [defendant] to cross the double-yellow lines and enter the lane of oncoming traffic, where he collided with [the motorcyclist], whose recent use of marijuana had the clear capacity to impact his ability to safely operate his own vehicle.

Defendant averred the motorcyclist had smoked marijuana the prior evening and still had two metabolites of marijuana in his system at the time of the accident, evidenced by toxicology screens of blood and urine samples drawn at the motorcyclist's autopsy. Defendant proffered Dr. Robert Pandina as an expert in the field of psychopharmacology and toxicology, who opined the motorcyclist was under the influence of marijuana at the time of the accident. The trial court granted the State's motion to bar Dr. Pandina's testimony. On appeal, defendant argues:

> POINT I
>
> THE TRIAL COURT ERRED IN PRECLUDING DEFENDANT'S EXPERT FROM TESTIFYING

3

REGARDING THE [MOTORCYCLIST'S] INTOXICATION AND ITS RELEVANCE TO CAUSATION AS WELL AS RECKLESSNESS.

    A.    STANDARD OF REVIEW.

    B.    THE MARKEDLY DEFICIENT AND UTTERLY PREJUDICIAL NATURE OF THE STATE'S APPLICATION ALONE WARRANTED IT[]S DENIAL.

    C.    THE LEGAL INVALIDITY OF THE APPLICATION, MOREOVER, DEMANDED IT BE REJECTED.

POINT II

THE TRIAL COURT FAILED TO PROPERLY INSTRUCT THE JURY ON CAUSATION, DEPRIVING DEFENDANT OF HIS RIGHTS TO AN IMPARTIAL ADJUDICATION, DUE PROCESS, AND A FAIR TRIAL.

POINT III

THE CUMULATIVE ERRORS COMM[I]TTED IN THIS CASE WARRANT A REVERSAL OF DEFENDANT'S CONVICTION [AND] A NEW TRIAL.

POINT IV

DEFENDANT'S SENTENCE MUST BE REDUCED.

Having reviewed the record, and in light of the applicable law, we affirm.

4

Defendant argues the trial court erred in granting the State's motion, filed during the trial, to bar Dr. Pandina's testimony because it was relevant to the issues of causation and recklessness. Thus the linchpin to this argument, as well as defendant's contention that the judge failed to properly instruct the jury on causation, is the relevancy of the evidence to the State's contention that defendant's guilt was based on one theory of causation: the actual result of defendant's recklessness was within the risk of which he was aware.

Relevant evidence has "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401; see also State v. Coruzzi, 189 N.J. Super. 273, 302 (App. Div. 1983). It "need only have some tendency to prove a material fact." Coruzzi, 189 N.J. Super. at 302. The inquiry is "whether the thing sought to be established is more logical with the evidence than without it." Ibid.

In a second-degree vehicular homicide prosecution, the State must prove beyond a reasonable doubt that (1) "defendant was driving a vehicle"; (2) "defendant caused the death"; and (3) the death was caused by driving a vehicle recklessly. State v. Eldridge, 388 N.J. Super. 485, 494 (App. Div. 2006). As to the third element:

> A person acts recklessly with respect to a material
> element of an offense when he consciously disregards

a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

[N.J.S.A. 2C:2-2(b)(3).]

Examination of the causation element involves a multi-step process described by our Supreme Court in State v. Buckley, 216 N.J. 249 (2013). See N.J.S.A. 2C:2-3(a). First, a jury must determine if a defendant's conduct was "an antecedent but for which the result in question would not have occurred," characterized by the Court as the "but for" test under N.J.S.A. 2C:2-3(a)(1). Buckley, 216 N.J. at 263. Next, inasmuch as vehicular homicide requires the State to prove recklessness, the jury must "conduct[] a 'culpability assessment' under N.J.S.A. 2C:2-3(c)," id. at 263-64 (quoting State v. Pelham, 176 N.J. 448, 460 (2003)), which provides in part:

When the offense requires that the defendant recklessly . . . cause a particular result, the actual result must be within the risk of which the actor is aware or, . . . if not, the actual result must involve the same kind of injury or harm as the probable result and must not be too remote, accidental in its occurrence, or dependent on another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense.

A-4310-17T1

> [Id. at 263 (alterations in original) (emphasis added)
> (quoting N.J.S.A. 2C:2-3(c)).]

The "actual result" in a vehicular homicide case is the accident victim's death. Id. at 264.

The Buckley Court recognized bifurcated prongs of N.J.S.A. 2C:2-3(c)—separated by the words, "if not"—in vehicular homicide cases. The first prong, focusing on the first part of the subsection,

> predicates a finding of causation upon proof that "the actual result" was "within the risk of which the actor is aware." N.J.S.A. 2C:2-3(c). Alternatively, causation may be proven under the second component of the statutory test: whether "the actual result" involves the "same kind of injury or harm as the probable result," and whether it is "too remote, accidental in its occurrence, or dependent on another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense." Ibid.
>
> [Id. at 254-55 (emphasis added).]

The Court, recognizing "the first prong of N.J.S.A. 2C:2-3(c) requires the jury to assess whether the defendant was aware that his allegedly reckless driving gave rise to a risk of a fatal motor vehicle accident," held: "If the jury determines that the State has proven beyond a reasonable doubt that the defendant understood that the manner in which he or she drove created a risk of

7

a traffic fatality, the element of causation is established under the first prong of N.J.S.A. 2C:2-3(c)." Id. at 264.

Defendant contends that the jury should have been allowed to consider evidence related to the second prong and "determine whether intervening causes or unforeseen conditions lead to the conclusion that it is unjust to find that the defendant's conduct is the cause of the actual result." Pelham, 176 N.J. at 461 (quoting State v. Martin, 119 N.J. 2, 13 (1990)). "'Intervening cause' is defined as '[a]n event that comes between the initial event in a sequence and the end result, thereby altering the natural course of events that might have connected a wrongful act to an injury.'" Ibid. (alteration in original) (quoting Black's Law Dictionary 212 (7th ed. 1999)); see also Buckley, 216 N.J. at 265 ("[A]n 'intervening cause' denotes an event or condition which renders a result 'too remote, accidental in its occurrence, or dependent on another's volitional act' to fairly affect criminal liability or the gravity of the offense." (quoting N.J.S.A. 2C:2-3(c); Pelham, 176 N.J. at 461-62)). Defendant urges Dr. Pandina's opinion that the motorcyclist was under the influence of marijuana and impaired when he was operating the vehicle at the time of the accident was relevant to the elements of recklessness and causation.

Dr. Pandina explained his view at a N.J.R.E. 104 hearing. Relying on Buckley, the trial court barred the doctor's testimony, finding it irrelevant to the "but for" test and the first prong of the culpability assessment. We review that ruling for an abuse of discretion and will "not 'substitute [our] own judgment for that of the trial court' unless there was a 'clear error in judgment' —a ruling 'so wide of the mark that a manifest denial of justice resulted.'" State v. Scott, 229 N.J. 469, 479 (2017) (quoting State v. Perry, 225 N.J. 222, 233 (2016)).

The Buckley Court recognized a clear demarcation in prosecutions involving only the first prong of the culpability assessment from those under the second prong. 216 N.J. at 266. Perpending the Legislature's inclusion of "if not" between the two culpability assessments in N.J.S.A. 2C:2-3(c), the Court determined they were alternate theories, and if the State proved that a "defendant understood that the manner in which he or she drove created a risk of a traffic fatality," causation was established under the first prong. Id. at 264.

The Court's ruling recognized each prong "as a basis to convict [a] defendant." Id. at 266. Thus, if the State chooses to narrow its prosecution to the first prong, as it did in Buckley and this case, a reviewing court need "not consider the potential import of [a] defendant's arguments with regard to the statute's second prong." Ibid. The Court was cognizant of earlier decisions it

described as focusing on the second prong, including our 2006 holding in Eldridge, 388 N.J. Super. at 499-500, that "keeping with the teaching of Martin, whenever causation is in dispute and whenever the State and defendant offer contrasting theories of causation, the court's charge to the jury must explain the legal consequences of accepting not only the State's theory, but also the defendant's theory of causation," Buckley, 216 N.J. at 265-66.  The Court distinguished those and other cases[3] it said focused on the second prong, and endorsed the State's prosecution under the first prong of N.J.S.A. 2C:2-3(c) without entailing the second prong.  Ibid.

The State's choice to restrict its prosecution to the first prong limited the admissible evidence to that relevant to the narrower issue of causation.  See id. at 267 ("As we noted in Pelham, 'the jury may consider only that which the law permits it to consider.'" (quoting Pelham, 176 N.J. at 466)).  The Court observed: "To be admissible on the issue of causation, the evidence at issue must be relevant to the jury's inquiry under the first prong of N.J.S.A. 2C:2-3(c)."  Ibid.

---

[3]  The cases cited by the Court were:  Pelham, 176 N.J. at 450-52; State v. Jamerson, 153 N.J. 318, 335-36 (1998); Martin, 119 N.J. at 9-10; Eldridge, 388 N.J. Super. at 487-88; and State v. Radziwil, 235 N.J. Super. 557, 570 (App. Div. 1989), aff'd o.b., 121 N.J. 527, 528 (1990).  Buckley, 216 N.J. at 265-66.

10

The Buckley Court focused on the determinations the jury would have to make in deciding the causation issue: first, the "but for" test; then, under the first prong, "whether 'the actual result' was 'within the risk of which the actor is aware.'" Ibid. (quoting N.J.S.A. 2C:2-3(c)). That analysis is apropos to this case.

Defendant's contention, advanced by Dr. Pandina, that the motorcyclist was under the influence at the time of the accident, was irrelevant to the jury's inquiry if the manner in which he drove his vehicle was the antecedent cause of the accident that resulted in the motorcyclist's death. "The 'but for' test of N.J.S.A. 2C:2-3(a) focuses the jury entirely upon the role of the defendant's conduct—the manner in which he drove before and during the collision." Ibid. As in Buckley, the State was required to "demonstrate nothing more than that the fatal accident would have been avoided had defendant not driven [the red Ferrari] in the manner in which he did." See ibid. Dr. Pandina's opinion about the effect of the metabolites in the motorcyclist's blood and urine bear no relevance to that issue.

So too, his opinion was irrelevant to the jury's first-prong analysis of whether defendant was aware that the manner in which he operated the Ferrari created a risk of the fatal collision. See id. at 267-68. "If the jury determines

11                                                                    A-4310-17T1

that defendant was aware that his conduct gave rise to such a risk, it need not assess the exact degree of that risk, or the variables that could affect its magnitude." Id. at 268.

We agree with the trial court's conclusion that there was no nexus between Dr. Pandina's expert testimony and either the "but for" test or the first statutory prong. In fact, neither the motorcyclist's alleged impairment from marijuana ingestion the night before the accident nor his failure to come to a complete stop at the stop sign before he turned and travelled three-hundred feet—without any further evidence of improper operation—before defendant's vehicle crossed into his lane and hit him head-on, was relevant to the jury's determination if the State met its burden with regard to those issues. We, therefore, discern no abuse of discretion in the judge's decision to preclude the evidence proffered by Dr. Pandina. Scott, 229 N.J. at 479.

We determine defendant's argument that the timing of the State's motion to preclude Dr. Pandina's testimony was improper and "expose[d] its inherent lack of validity," is without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2). The ongoing trial provided better context for the trial court's consideration of the proffered testimony's relevance. See State v. Cary, 49 N.J. 343, 352 (1967) (cautioning a trial court "generally should not rule on the

12

admissibility of particular evidence until a party offers it at trial"); see also State

v. Cordero, 438 N.J. Super. 472, 484 (App. Div. 2014).  Defendant does not

allege or show any prejudice from the timing of the motion.  His counsel met

and ably argued against the State's motion.

Consistent with the trial court's adherence to the holding in Buckley, it

instructed the jury on the first prong of N.J.S.A. 2C:2-3(c) and, over defendant's

objection, omitted the instruction regarding the second prong.[4]  See Buckley,

216 N.J. at 266.

The trial court instructed the jury:

> Causation has a special meaning under the law. To establish causation the State must prove two elements, each beyond a reasonable doubt.  First, that but for the defendant's conduct the result in question would not have happened.  In other words, without the defendant's actions the result would not have occurred.  Second, for reckless conduct that the actual result must

---

[4]  The omitted portion of the model jury charge on second-prong causation provides:

> [I]t must involve the same kind of injury or harm as the probable result and must also not be too remote, too accidental in its occurrence or too dependent on another's volitional act to have a just bearing on the defendant's liability or on the gravity of his/her offense.
>
> [Model Jury Charges (Criminal), "Causation (N.J.S.A. 2C:2-3)" (approved June 10, 2013).]

have been within the risk of which the defendant was aware.

In this case you've heard evidence that [the motorcyclist] failed to completely stop at a stop sign, had THC/[m]arijuana in his blood at the time of the incident. And that . . . defendant's and . . . Meyer's Ferraris may or may not have made contact at some point before the incident. I instruct that those items are not relevant to the issue of causation.

The issue of causation remains one that has to be decided by you as instructed earlier in my charge. However, the status of these items is not to be part of your consideration on the issue [of] causation.

Defendant argues the omission deprived him of "his rights to an impartial adjudication, due process, and a fair trial." "[A]ppropriate and proper charges are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)). "The trial court must give 'a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" Id. at 159 (quoting State v. Green, 86 N.J. 281, 287-88 (1981)). "Thus, the court has an 'independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party.'" Ibid. (alteration in original) (quoting Reddish, 181 N.J. at 613). "Because proper jury

instructions are essential to a fair trial, 'erroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant." Ibid. (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)).

"While '[c]ausation is a factual determination for the jury to consider . . . the jury may consider only that which the law permits it to consider.'" Buckley 216 N.J. at 263 (alterations in original) (quoting Pelham, 176 N.J. at 466). Here, the trial court properly excluded the second-prong jury instruction.

Defendant maintains that the second-prong instruction was required because it was possible the jury could have found that evidence of one or more of another's volitional act—the motorcyclist's marijuana impairment; the motorcyclist's failure to come to a complete stop at the stop sign; Meyer's operation of the silver Ferrari that caused defendant to travel into the oncoming lane—were intervening causes that broke the chain of causation. As we have already explained, that evidence is irrelevant and was properly excluded from the jury's consideration which focused on the first prong, the State's only theory of culpability.

Even if we set aside the Buckley Court's recognition of discrete theories of liability under N.J.S.A. 2C:2-3(c), and its approval of the State's prosecution solely under the first prong, the motorcyclist's alleged transgressions are not

intervening causes. Under the statutory second prong, "it is for the jury to determine whether intervening causes or unforeseen conditions lead to the conclusion that it is unjust to find that the defendant's conduct is the cause of the actual result." Martin, 119 N.J. at 13.

> An "'intervening cause'" occurs when an event "'comes between the initial event in a sequence and the end result, thereby altering the natural course of events that might have connected a wrongful act to an injury.'" Pelham, 176 N.J. at 461. "Generally, to avoid breaking the chain of causation for criminal liability, a variation between the result intended or risked and the actual result of [the] defendant's conduct must not be so out of the ordinary that it is unfair to hold [the] defendant responsible for that result." Id. at 461-62. Thus, an "intervening cause" denotes an event or condition which renders a result "too remote, accidental in its occurrence, or dependent on another's volitional act" to fairly affect criminal liability or the gravity of the offense. See N.J.S.A. 2C:2-3(c); Pelham, 176 N.J. at 461-62.
>
> [Buckley, 216 N.J. at 265 (alterations in original) (citations omitted).]

Neither the motorcyclist's stop-sign violation nor his marijuana use—both of which occurred well prior to the collision—was "an independent intervening cause capable of breaking the chain of causation triggered by defendant's wrongful actions," Pelham, 176 N.J. at 468, where the motorcyclist was hit head-

on in his own lane of travel some three-hundred feet after he turned left after passing the stop sign.

Evidence that Meyer lost control of the silver Ferrari causing defendant to travel into the motorcyclist's lane, likewise, does not "lead to the conclusion that it is unjust to find that the defendant's conduct is the cause of the actual result." Buckley, 216 N.J. at 265 (quoting Pelham, 176 N.J. at 461). The source of that evidence was two witnesses present at the scene.

Michael Demkowicz said he saw both Ferraris line up side-by-side and come to a complete stop. He heard motors revving, describing the sound as similar to what would be heard at a racetrack. He then saw the vehicles travel at a high rate of speed—which he estimated was over eighty miles an hour—down Berrys Creek Road, lose control and "bump each other." Another witness present at the scene, Forest Harrell, heard engines revving—a noise familiar to him from his experience working at NASCAR events—then saw two cars line up very close to one another and travel down Berrys Creek Road at a high rate of speed, which he estimated was over one hundred miles per hour. Within "milliseconds," he saw "the silver and red car" spin out, heard a large bang and saw smoke and debris flying. From where he was standing, there appeared to be a collision between the silver and red cars.

A-4310-17T1

Under the circumstances described by the witnesses, the loss of control cannot be viewed as "an event or condition which renders a result 'too remote, accidental in its occurrence, or dependent on another's volitional act' to fairly affect criminal liability or the gravity of the offense." Ibid. (quoting N.J.S.A. 2C:2-3(c)). The record amply demonstrates that the Ferraris were high-performance motor vehicles capable of quick acceleration and high speeds. The risk of bumping and losing control during the operation of those vehicles as described by Demkowicz and Harrell is not "so out of the ordinary that it is unfair to hold defendant responsible for that result." Pelham, 176 N.J. at 461-62.

Under the first prong of N.J.S.A. 2C:2-3(c), the jury determines whether a fatal accident was within the risk of which defendant was aware. Buckley, 216 N.J. at 267-68. The jury, therefore, was properly instructed to consider that risk in light of defendant's operation of the red Ferrari, part of which involved defendant's awareness of the risk created by his operation next to the silver Ferrari. Thus, Meyer's operation of the silver Ferrari is not an intervening cause that necessitated the judge to instruct the jury on the second-prong theory of causation.

A-4310-17T1

The trial court's charge, consistent with the holding in <u>Buckley</u>, correctly instructed the jury on only the first prong, providing "a road map to guide the jury" so that it did not "take a wrong turn in its deliberations." <u>State v. Galicia</u>, 210 N.J. 364, 386 (2012) (quoting <u>Martin</u>, 119 N.J. at 15). The trial court did not err by omitting the second-prong instruction.

Finally, we address defendant's challenge to his sentence. Defendant argues the five-year prison sentence imposed by the trial court "was manifestly excessive and a clear abuse of discretion." He contends the sentence was grossly disproportionate to that imposed upon Meyer. He also avers the trial court should have found mitigating factors eight, nine and ten, N.J.S.A. 2C:44-1(b)(8), (9) and (10); because he offers no explanation in his merits brief why those factors should have been found, we deem that argument abandoned. <u>See</u> <u>N.J. Dep't of Envtl. Prot. v. Alloway Township</u>, 438 N.J. Super. 501, 505-06 n.2 (App. Div. 2015) (holding that an issue raised "[i]n a single sentence in its brief" is deemed waived).

We review sentencing determinations with a deferential standard, <u>see</u> <u>State v. O'Donnell</u>, 117 N.J. 210, 215 (1989), and will disturb a trial court's sentence only in instances where the sentencing guidelines were not followed, the aggravating and mitigating factors found by the trial judge were unsupported

19

by the evidence, or the judge's application of the sentencing guidelines rendered the sentence clearly unreasonable, State v. Roth, 95 N.J. 334, 364-65 (1984). Under that deferential standard, only when the facts and law show "such a clear error of judgment that it shocks the judicial conscience" will we modify a sentence on appeal. Id. at 364.

Our analysis of a sentence is heightened, however, when a defendant claims sentencing disparity. Our Supreme Court observed in State v. Roach that "uniformity [is] one of the major sentencing goals . . . [as] '[t]here can be no justice without a predictable degree of uniformity in sentencing.'" 146 N.J. 208, 231 (1996) (quoting State v. Hodge, 95 N.J. 369, 379 (1984)). "'The central theme' of our sentencing jurisprudence is the exercise by courts of 'a structured discretion designed to foster less arbitrary and more equal sentences.'" Id. at 232 (quoting Roth, 95 N.J. at 345).

The Court recognized the legislative basis for that structure:

> To minimize disparity, a sentencing court exercises its discretion in the structured setting prescribed by the [Criminal] Code. Our statutes provide a "'general framework to guide judicial discretion in imposing sentences' to ensure that similarly situated defendants [do] not receive dissimilar sentences." [State v. Natale, 184 N.J. 458, 485 (2005)]. When an ordinary term of incarceration is warranted, N.J.S.A. 2C:43-6(a) prescribes statutory ranges for that term based upon the degree of the offense: ten to twenty years for a first-

20

degree crime, five to ten years for a second-degree crime, three to five years for a third-degree crime, and up to eighteen months for a fourth-degree crime.

[State v. Fuentes, 217 N.J. 57, 72 (2014) (second alteration in original).]

The purpose of the statutory guidelines "is to promote fairness and public confidence in the 'even handed justice of our system.'" Roach, 146 N.J at 232-33 (quoting State v. Hicks, 54 N.J. 390, 391 (1969)). The ultimate determination "is whether the disparity is justifiable or unjustifiable." Id. at 233.

"[A] sentence of one defendant not otherwise excessive is not erroneous merely because a co[]defendant's sentence is lighter." Hicks, 54 N.J. at 391; see also Roach, 146 N.J. at 232. "The trial court must determine whether the co[]defendant is identical or substantially similar to the defendant regarding all relevant sentencing criteria." Roach, 146 N.J. at 233.

The trial court comprehensively explained the difference between the sentences:

[D]efendant and [Meyer] are neither identically nor substantially similarly situated for the following reasons:

1) At Meyer's sentencing [that sentencing judge] found that Meyer was remorseful, and even relied upon his remorse to find mitigating factors [eight, nine and ten] additionally. Meyer took responsibility for his actions and admitted fault, when he pleaded guilty.

21

Defendant has not taken any responsibility for his actions, and does not appear, other than this brief statement to the [c]ourt today, to be . . . remorseful.

2) At the time of the accident Meyer was [nineteen] years of age, and defendant was [twenty-eight] years of age. Meyer was ten years younger than . . . defendant, and was following . . . defendant, his employer, to a job site the morning of the accident.

In fact, counsel for the State has pointed this out to the [c]ourt in [Meyer's] sentencing transcript [of] February 24th, 2017, and I'll quote it again. The [j]udge [said], "Lastly, the conduct of a youthful defendant was substantially influenced by another person more mature than the defendant, and I'm relying on this. Although, your co[]defendant is only [ten] years older than you, I think it's a significant [ten] years. I think he prevailed upon you, goaded you into this, in [a] way, and I'm relying on that." She also specifically mentioned, "Again you are to cooperate fully in this ongoing companion case. If you fail to show up here, or once fail to cooperate in any way, I invite the Prosecutor's Office to come back to court for a violation of [p]robation, and you will be in Bergen County [j]ail."

Which brings me to the next distinguishing factor. Meyer pleaded guilty two years ago and agreed to cooperate with the State as to the involvement of . . . defendant in exchange for a reduction in his sentence to the third-degree range.

And four, defendant's vehicle was the vehicle that struck and killed [the motorcyclist].

And finally, defendant was offered a plea deal, under which the State agreed to recommend a sentence in the third-degree range, but that offer was rejected by

> defendant. And therefore, defendant is not now entitled to seek the benefit by the plea bargain.
>
> We went through a full trial. The jury came back, convicted defendant of [v]ehicular [h]omicide, second-degree.
>
> Defendant, for all of the foregoing reasons is not entitled to a downward departure, and will sentence in the second-degree range[.]

Although uniformity in sentencing is a major objective of the criminal justice system, not all divergent sentences are unfair or unjust. Id. at 231-32. Here, the trial court's reasoning fully justified the disparate sentence. Meyer was not similarly situated to defendant, and thus, the court did not abuse its discretion in sentencing defendant to a five-year term of imprisonment, the lowest ordinary-term sentence for a second-degree conviction.

We determine the balance of defendant's arguments, including that reversal is required because of cumulative errors and that the trial court erred by declining to sentence him in the third-degree range pursuant to N.J.S.A. 2C:44-1(f)(2), are without sufficient merit to warrant any discussion. R. 2:11-3(e)(2). We perceive no violation of the sentencing guidelines; the aggravating and mitigating factors found by the judge were based upon credible evidence in the record; and the sentence imposed for these multiple crimes is not "clearly unreasonable so as to shock the judicial conscience." Fuentes, 217 N.J. at 70

23

(quoting <u>Roth</u>, 95 N.J. at 365).  Finally, there were no compelling reasons for a downgraded sentence.  <u>State v. Megargel</u>, 143 N.J. 484, 505 (1996).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION